UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BRITTNEY BIEHNER a/k/a BRITTNEY REILLY,

                               Plaintiff,

                  -against-

THE CITY OF NEW YORK;
NEW YORK CITY DEPARTMENT OF EDUCATION;
OMOTAYO CINEUS; STEVE TRAVERSIERE; and
"JOHN DOE AND JANE DOE # 1-100" said names
being fictitious, it being the intent of Plaintiff
to designate any and all individuals, officers, members,
agents, servants, and/or employees of the
aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally,

                          Defendants.
-------------------------------------------------------------------X

**AMENDED**
**VERIFIED COMPLAINT**

Docket No. 19-CV-9646

**Plaintiff Demands a**
**Trial by Jury**

      Plaintiff, by her attorneys, the Law Offices of Thomas F. Liotti, LLC, for her Amended

Complaint in this matter, respectfully alleges:

## BASIS FOR JURISDICTION

      1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 28

U.S.C. §1343(a)(1)(2)(3) and (4), as a result of claims arising under Civil Rights Law §1983,

§1985(1)(2) and (3), §1988, and the Fourteenth Amendment of the United States

Constitution; together with this Court's pendent jurisdiction over causes of action arising

under New York State laws, both common and statutory. Plaintiff further invokes the

supplemental jurisdiction of this Court to hear and decide claims arising out of state law

pursuant to 28 U.S.C. §1367(a).

## VENUE

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1).

3.      Plaintiff brings this action to redress harms caused to her by the Defendants as a result of their intentional disregard and violation of her rights.

4.      The amount in controversy greatly exceeds the amount required to sustain subject matter jurisdiction in this Court.

5.      Based on the foregoing, this Court has subject matter jurisdiction and may exercise supplemental and pendant jurisdiction of all related state-law based claims.

## JURY DEMAND

6.      Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

7.      That at all times relevant herein and material hereto, the Plaintiff, BRITTNEY BIEHNER a/k/a BRITTNEY REILY, ("Plaintiff" or "Ms. Biehner"), was and still is a resident of the County of Suffolk, State of New York, and is employed with the Catherine and Count Basie Middle School 72, in Queens County, New York.

8.      At all times relevant herein and material hereto, the Defendant, the City of New York was and is a domestic municipal corporation located in and established pursuant to the laws of the State of New York.

9.      At all times relevant herein and material hereto, the Defendant, The New York City Department of Education, was and is a domestic municipal corporation located in and established pursuant to the laws of the State of New York.

2

10.    At all times relevant herein and material hereto, the Defendant, Omotayo Cineus ("Principal Cineus" or "Defendant Cineus") was and is employed as principal at the Catherine and Count Basie Middle School 72, in Queens County, New York, and was and is an employee of the New York City Department of Education.

11.    At all times relevant herein and material hereto, the Defendant, Steve Traversiere (Assistant Principal Traversiere" or "Defendant Traversiere") was and is employed as an Assistant Principal at the Catherine and Count Basie Middle School 72, in Queens County, New York, and was and is an employee of the New York City Department of Education.

12.    Plaintiff does not know the true names of Defendants, JOHN DOE AND JANE DOE # 1-100" inclusive, and therefore initiates this legal action against them in their fictitious names, and Plaintiff is informed and believes that each of those Defendants was in some manner negligently and proximately responsible for the events and happenings alleged in this complaint and for Plaintiff's damages.

13.    The Plaintiff is informed and believes, and based on that information and belief alleges, that each of the Defendants designated herein are legally responsible for the events and happenings referred to in this Complaint, and unlawfully caused the injuries and damages to the Plaintiff alleged in this Complaint.

14.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this complaint, Defendants were the agents and employees of their codefendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

15.    Plaintiff has complied with the requirements of New York General Municipal

Law Section 50-I by serving notices of claim on THE CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF EDUCATION, on February 8, 2019, within the time required by New York General Municipal Law Section 50-e. More than thirty days have elapsed since the service of those notices, and no offer of settlement has been made.

16.     At the request of The City of New York, on May 7, 2019, the Plaintiff submitted to hearings pursuant to New York General Municipal Law Section 50-h involving the events as referred to hereinafter. No other hearings have been requested or conducted.

## **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

17.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "16" above, with the same force and effect as though fully set forth herein.

18.     The Plaintiff is a dedicated, effective, and highly respected and highly educated, middle school teacher employed with the Department of Education as a New York City Public School Teacher at the Catherine and Count Basie Middle School 72, in Queens County, New York and consistently rated effective with an overall satisfactory rating in her performance as a probationary teacher.

19.     The issues in this matter commenced during the Spring semester of the 2012-2013 school year, when there began a continuing pattern of erroneously discriminating against the Plaintiff and targeting the Plaintiff for unwarranted disciplinary action.

20.     On May 21, 2013, the Plaintiff received a letter from the Principal of the Catherine and Count Basie Middle School 72, (Defendant, Omotayo Cineus), wherein the Plaintiff was advised of a conference relating to alleged disciplinary action, to wit it specifically stated, "*I have scheduled an appointment with you to meet me in my office on*

*Thursday, January 24, 2013*, period 7. Because this conference may lead to disciplinary action, you may bring a union representative."

21.     This incomprehensible notice resulted in a meeting to discuss alleged absences of the Plaintiff. As a result, a subsequent letter from the Defendant, Principal Cineus allegedly summarized this meeting, and erroneously discussed the Plaintiff's absences and further erroneously alleged that due to a family medical situation and more potential lateness and absences, a leave of absence would be sought by the Plaintiff for the remainder of the school year. This was not accurate.

22.     In this regard, the Plaintiff was inexplicably subjected to unnecessary disciplinary action with regard to six (6) excused absences for which the Plaintiff had already provided doctor's notes. Moreover, it should be noted that teachers are permitted ten (10) absences per school year. Nonetheless, the Plaintiff was subjected to a disciplinary meeting when she had not exceeded the allowable number of unexcused absences for the school year.

23.     Subsequently, the Plaintiff learned of an alleged incident that occurred on June 11, 2013, involving a student in her class concerning English Language Arts (ELA) writing portfolio folders, which the students were prohibited to remove from the classroom.

24.     The Plaintiff became aware that she was accused of having forcibly taken a shoe from a student in exchange for the student removal of a writing portfolio folder.

25.     The Plaintiff taught special education students, who would often forget to bring school supplies or their portfolio papers to class. As such, she effectuated a class rule, wherein if a student needed to borrow an item, the student would temporarily relinquish an item of the student's choice, in exchange; and said item would be returned to the student when the item borrowed was returned. This was effective in reminding the special education

students to return the items they had borrowed and/or to return the writing portfolio folders at the end of class.

26.     On or about June 12, 2013, the Plaintiff received a letter from Defendant, Principal Cineus, wherein the Plaintiff was advised of a conference relating to alleged disciplinary action, to wit it specifically stated, "*I have scheduled an appointment with you to meet me in my office on Friday, June 14, 2013, period 1. Because this conference may lead to disciplinary action, you may bring a union representative.*" There was never any indication of an allegation of corporal punishment to the Plaintiff by anyone.

27.     This meeting on June 14, 2013 <u>never</u> occurred. However, the summary write up in this instance indicates that the Plaintiff actually met with the Principal and the Plaintiff's UFT representative on June 19, 2013 (eight days after the alleged incident).

28.     As stated in the letter dated June 20, 2013, "he [the student] <u>gave a shoe willingly</u>." Also stated in the summary by Meera Pahuja (Para) dated June 13, 2013, "Ms. Reilly *asked* for the shoe." [It was not forcibly taken]. As stated in the letter dated June 20, 2013, "....and in this case, the class stated to [the student] that he had to give a shoe." Out of the 15 students that were in the class at the time, only 3 student summaries were provided, which included the student making the allegation. Further, two (2) of the student's summaries are dated June 13, 2013; the accusing student's summary, is dated June 12, 2013.

29.     In accordance to the Chancellor Regulation A-20, with respect to the Plaintiff, the Defendant, Principal Cineus did flagrantly violate the rule:

> Under the Regulation of the Chancellor, A-420, Section IV, (B), "[P]rincipal or designee must immediately report all allegations of corporal punishment of students by DOE employees, custodial workers, vendors, consultants, CBO staff and similar individuals to OSI <u>within one school day of learning of the allegation</u> by one of the following methods: (1) entering the

information into the OORS; or (2) entering the information into the OSI reporting system, or calling OSI. If the Principal/designee enters a report of alleged corporal punishment into OORS, he/she will automatically be routed to the OSI's online reporting system.

30.     There is no evidence of completing this stated task. There is no evidence of an Office of Special Investigation (OSI) case, (except, for a July 10, 2017 form to Office of Case Assessment and Review, which was not seen by the Plaintiff until her October 18, 2018 review of her personnel file), which is signed by the Defendant, Principal Cineus, dated **four (4) years** past the date of the accusation.

31.     Under A-420, Section IV section C:

"[O]nce a report of corporal punishment is received in OSI's online reporting system, that system will automatically generate a confirmation number ("OSI number"). The OSI number must be referenced in all subsequent communications regarding the reported incident."

32.     No OSI case number was ever provided to the Plaintiff by the Defendant, Principal Cineus; an OSI number is only shown on a form dated July 10, 2017, which was not seen by the Plaintiff until her October 18, 2018 review of her personnel file.

33.     Under A-420, Section IV section D:

"[P]arents and students may report a complaint of corporal punishment by notifying the principal/designee of the school their child attends, by notifying OSI directly through OSI's online reporting system, or by contacting OSI."

34.     However, the Plaintiff was never advised of any such complaint of corporal punishment made directly by the parent and/or student through OSI's online reporting system or by contacting OSI.

35.     As defined in the Chancellor Regulation A-420:

"[C]orporal punishment is defined as any act of physical force

7

upon a pupil for the purpose of punishing that pupil. Corporal punishment does **not** include the use of reasonable physical force for any of the following purposes to protect the property of the school or of others."

36.    Under the Chancellor Regulation A-420, Section VI, relating to investigations:

"B. Whether the case is investigated by OSI or by the school, the following investigative steps must be taken: "(1) Interview the alleged victims and student/staff witnesses <u>separately</u> and obtain their written statements as quickly as practicable."

37.    In violation of Chancellor Regulation A-420, Section VI, the students were interviewed in a whole group setting, <u>not</u> separately. Further, the Plaintiff was not given an opportunity to produce a statement in response to the accusations.

38.    The Assistant Principal, Defendant, Steve Traversiere violated Chancellor Regulation A-420, Section VI, relating to investigations, by going into a classroom of the Plaintiff's students, (while they were in another class), and asked the students, <u>as whole</u>, "*[C]an everyone please write down on a piece of paper what happened between L.P. and Ms. Reilly?*" [with regard to her taking off his shoe]. No student was interviewed separately.

39.    Moreover, the students' statements were not written on Online Occurrence Reporting System (OORS), where the students would sign and date their responses; their statements were typed by a third party and are unsigned.

40.    Further, the Defendant, Principal Cineus failed her duty to inform the Plaintiff in an appropriate time frame of any allegation of corporal punishment. An allegation of corporal punishment was <u>not</u> stated on the June 12, 2013 notice received by the Plaintiff. The Plaintiff was <u>not</u> provided with 48 hour written notice of the right to appear with union representation at an investigative interview <u>to discuss an allegation of corporal punishment</u>.

41.     The letter dated June 20, 2013, explains that the meeting with the Plaintiff and her Union representative did not take place until June 19, 2013, which is eight (8) days after the alleged accusations.

42.     The Plaintiff was only advised of an incident that occurred at the meeting with the principal on or about June 19, 2013. The Plaintiff never waived her right to 48-hour notice, nor did she sign any documents relating to this accusation.

43.     The Plaintiff was never permitted to provide a statement concerning this allegation. See, Regulation of the Chancellor, A-420, Section IV, (B), supra, "[P]rincipal or designee must **immediately** report all allegations of corporal punishment of students by DOE employees, custodial workers, vendors, consultants, CBO staff and similar individuals to OSI **within one school day of learning of the allegation**.

44.     Notably, the Plaintiff was never removed from her assignment pending the outcome of any "corporal punishment investigation," nor was she ever informed in writing of the nature of any investigation. To her knowledge, there was no investigation ever completed.

45.     The Plaintiff **never** reviewed and signed a privacy acknowledgment that she will not disclose the contents of the statements or retaliate against the author(s) of the statements. Upon information and belief, the Plaintiff's UFT union representative was also not provided any opportunity to review and sign a privacy acknowledgment.

46.     On or about October 17, 2018, while out on maternity leave, the Plaintiff exercised her contractual right to duplicate the contents of her personnel file. In the file, among other things, the Plaintiff, discovered, for the first time, a letter dated June 20, 2013, summarizing the June 19, 2013 meeting.

47.     The Defendants' actions were not discovered by the Plaintiff until on or about October 17, 2018, when she exercised her contractual right to duplicate the contents of her personnel file, as such the Plaintiff's claims are timely.

48.     Further, there were more items in the file that contractually do not belong there and further demonstrate damage to the Plaintiff's professional integrity and her professional name, and an intentional disregard and violation of her rights.

49.     In 2013-2014, the Plaintiff was inappropriately and inexplicably denied tenure, even though her performance as an educator has been consistently rated effective with an overall satisfactory rating.

50.     The Plaintiff has been on maternity beginning September 1, 2014, and due to an interim second pregnancy and an automobile accident, she is not scheduled to return to the school until August 1, 2020, wherein she has been advised that she will be re-evaluated for tenure. Should she be denied tenure at that time, she will be terminated as a teacher.

51.     The Defendants' negligent, inappropriate, and fraudulent actions have now substantiated an erroneous basis to deny the Plaintiff tenure when she returns to the school in August, 2020.

### CAUSE OF ACTION FOR DEFAMATION AND/OR DEFAMATION *PER SE*

52.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "51", above, with the same force and effect as though fully set forth herein.

53.     On or about October 17, 2018, the Plaintiff exercised her contractual right to duplicate the contents of her personnel file. In the file, the Plaintiff, discovered, for the first time, a five year (5) old letter dated June 20, 2013, summarizing the June 19, 2013 meeting,

which was improperly present in the Plaintiff's file. Said summary letter stated as follows: "*Corporal punishment is the active force against a student.* **Allegations of corporal punishment are <u>sustained</u>**." Further, there were more items in the file that contractually do not belong and further demonstrate defamation of the Plaintiff's professional integrity and her professional name, and violate her rights, to wit: a "Facsimile Transmittal Sheet" <u>dated July 23, 2013</u>, and addressed to an individual named Chester Hawkins (unknown to Plaintiff and whose position is not identified in the document), from the Defendant, Principal Cineus, for the purpose of providing seven (7) unidentified pages for review. In addition, a "Facsimile Transmission Log" was addressed to the Plaintiff, at fax number (631) 696-3867, on <u>June 27, 2013</u>, and marked urgent and for review. The seven (7) unidentified pages are not present in the file.

54.     Furthermore, it states in the notes/comments of the fax cover sheet: "*Ms Reilly, please review and sign. Fax back to me, I'll be in the office 7/3/13. Thank you. Ms Reilly, please call before you fax these documents back.*" Not only was this document allegedly faxed after the conclusion of the 2012-2013 school year, (during the Summer break), but the Plaintiff does not own a fax machine, nor did it coincide with any contact number information the Plaintiff ever provided within her household. She had never received this alleged fax. Lastly, with regard to what was identified therein as "OSI Case No. 13-05342x," after reviewing the Principal's file and other school records, the following were identified in a form dated <u>July 10, 2017</u>, as being **unable** to be located:

- A420/421 Incident Report Form
- Notes from the interview with the victim
- Statements of all individuals listed as witnesses

- Copy of letter informing subject of the allegation made/sets meeting with time/informs subject of right to union representation

- Notes from the interview with the victim and/or subject written statement.

55.     These facts substantiate the claim that the Defendant, Principal Cineus failed to follow the Chancellor Regulation A-420 and Article 20 of the Contract, as a true corporal punishment investigation would mandate these documents. Further, no explanation is provided for why this was being sent more than four (4) years following the alleged incident.

56.     The effects of the Defendants' actions are continuing, as on November 14, 2018, the Plaintiff requested that the aforesaid documentation, which clearly violated the Regulations of the Chancellor and was outdated and inappropriately placed in her file, be appropriately removed. This request was denied.

57.     The Plaintiff was never made aware, prior to reviewing her file, that an Office of Special Investigations case had been opened regarding an allegation of corporal punishment or that any investigation was conducted.

58.     Most notably, the Plaintiff made a Freedom of Information Request and on February 15, 2019, and learned for the first time that unbeknownst to her, an Office of Special Investigation Corporal Punishment Intake Form dated June 13, 2013, had been imputed permanently into the New York City Department of Education system, falsely containing the following description: "*pushed and grabbed*" with respect to the student and alleged that "*Ms. Reilly snatched shoe off of his foot because he did not have his folder.*" The Plaintiff was advised through the aforesaid Freedom on Information Request that the status of the OSI case was listed as sustained and "closed."

59.     As such, the Plaintiff's personnel file and also the permanent record with the

New York City Department of Education, contains false information regarding a "substantiated" allegation of corporal punishment against the Plaintiff, which has and will cause her injury in her trade, business, and profession as a Middle School teacher, working with children.

60.    The accusations made against the Plaintiff, as documented, published, spoken, generated and disseminated by these Defendants and others to the third party as identified above are remarkably false.

61.    Further, these statements contained in her permanent record are falsehoods. There was never any indication of an allegation of corporal punishment to the Plaintiff by anyone. Until the February, 2019, response to the Plaintiff's Freedom of Information Request, there is no evidence of an Office of Special Investigation (OSI) case. The Plaintiff's file contained a July 10, <u>2017</u> form addressed to Office of Case Assessment and Review, which is erroneously dated four years past the date of the original accusation.

62.    The Plaintiff was presumed to be guilty in these areas. This rush to judgment without an opportunity for the Plaintiff to be heard is further a denial of due process and the equal protection of the laws and defamation.

63.    Defendants' acts, taken singularly and in combination, are a direct and proximate cause of Plaintiff's damages.

<u>The Plaintiff is a Private Figure</u>

64.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "63," above, with the same force and effect as though fully set forth herein.

65.     The Plaintiff is a private figure for the purposes of this action, having lived her entire life outside of the public eye.

66.     The Plaintiff did not engage the public's attention to resolve any public issue that could impact the community at large.

<u>The Defendants Acted Negligently and With Actual Malice</u>

67.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "66," above, with the same force and effect as though fully set forth herein.

68.     The Defendants documented, published, spoke, and disseminated false and defamatory statements negligently and with actual knowledge of falsity or a reckless disregard for the truth, ignoring the rules of proper procedure and protocol.

69.     The Defendants knew, but ignored the importance of properly verifying the damaging and incendiary accusations against the Plaintiff prior to imputing a complaint with the Office of Special Investigation and sustaining the allegations in writing without providing the proper notification to the Plaintiff.

70.     The Defendants knew, but ignored the importance of verifying the damaging and incendiary accusations against the Plaintiff prior to documentation and distribution.

71.     The negligence and actual malice of the Defendants is demonstrated by their utter knowing disregard for the truth available; however, the Defendants chose to substantiate its own biased narrative.

72.     Instead of following the proper protocol for investigations, the Defendants, recklessly rushed to record and distribute their false and defamatory accusations in order to advance their own respective agendas.

73.    In doing so, the Defendants distributed the false allegations giving these false and defamatory accusations the appearance of credibility and permanence.

74.    The Defendants departing from the reasonable standard of care as articulated in New York City Chancellor Regulations and the contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT).

75.    The Defendants' collective conduct demonstrates a purposeful avoidance of the truth and the recording and transmission of false and defamatory accusations with actual knowledge of falsity and disregard for appropriate procedure.

76.    The Defendants negligently and recklessly transmitted its false and defamatory accusations by failing to conduct a reasonable and appropriate investigation, and allowing these false findings to become a permanent part of the Plaintiff's professional record.

77.    Indeed, the Defendants negligently and recklessly relied upon a biased pre-disposition of guilt on the part of the Plaintiff.

78.    The Defendants consciously elected to ignore any contrary information in favor of its pre-conceived, false narrative against the Plaintiff.

79.    The Defendants violated protocol and inappropriately transmitted false and defamatory accusations with actual knowledge of falsity and allowing these false findings to become part of the Plaintiff's professional record.

80.    The Defendants violated protocol and inappropriately negligently and recklessly transmitted false and defamatory accusations in derogation of acceptable principals of professional ethics, including by wrongfully placing its own biased agenda over the harm the false and defamatory accusations caused to the Plaintiff.

81.     The Defendants actual malice is further evidenced by any failure to retract the false and defamatory accusations made against the Plaintiff.

<u>Damages</u>

82.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "81," above, with the same force and effect as though fully set forth herein.

83.     The transmission of the false and defamatory accusations regarding corporal punishment directly and proximately caused substantial and permanent damage to the Plaintiff's profession as a school teacher working with children, which was reasonably foreseeable.

84.     The false and defamatory accusations against the Plaintiff are defamatory *per se*, as they are libelous on their face without resort to additional facts, and as clearly demonstrated here, the Plaintiff with an erroneously sustained allegation of corporal punishment is subjected to public hatred, contempt, scorn, obloquy, and shame and injurious to her profession as a Middle School teacher working with children.

85.     These statements were made without privilege or authorization.

86.     The statements attacked the Plaintiff's professional abilities and the conduct of Plaintiff's employment as a New York City School teacher and were therefore defamatory *per se*.

87.     The Plaintiff has suffered, and will continue to suffer, damages as a result of the Defendant's defamation of the Plaintiff's employment as a teacher and her professional reputation.

88.     As a direct and proximate result of the false and defamatory accusations the Plaintiff suffered and continues to suffer permanent harm to her reputation as a New York City school teacher.

89.     As a direct and proximate result of the false and defamatory accusations the Plaintiff suffered and continues to suffer severe emotional distress.

90.     As a direct and proximate result of the false and defamatory accusations the Plaintiff is forced to live her life in a constant state of concern over retaliation, denial of tenure, and termination of her employment with the New York City Department of Education. The Plaintiff is highly educated and currently enrolled in a Doctoral program for curriculum and instruction. Nonetheless, she will be unable to pursue any administrative positions with the Department of Education as a result of these actions.

91.     The Defendants transmitted the false and defamatory accusations with actual malice and common law malice, thereby entitling the Plaintiff to an award of punitive damages.

92.     The Defendants' conduct was outrageous and willful, demonstrating that entire want of care that raises a conscious indifference to consequences.

93.     The Plaintiff is entitled to an award of punitive damages to punish the Defendants to deter them from repeating such egregiously unlawful misconduct in the future.

94.     Plaintiff sustained damages in excess of the jurisdictional limits of all lower courts, which might otherwise have jurisdiction.

## CAUSE OF ACTION FOR NEGLIGENCE

95.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "94," above, with the same force and effect as though fully set forth herein.

96.     All Defendants each individually, by and through its agents, servants and employees, actual and ostensible, were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to the Plaintiff; such negligence was continuing and cumulative over the period of time referenced herein.

97.     Defendants' negligence and negligent acts, whether taken singularly or in combination, were a direct and proximate cause of Plaintiff's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

98.     The Plaintiff has and will suffer significant economic damages, actually and proximately caused by the departures and negligence of the Defendants herein.

99.     The injuries and damages sustained by Plaintiff were caused solely by the torts of the Defendants, without any negligence on the part of any other person contributing thereto.

100.    Plaintiff sustained damages in excess of the jurisdictional limits of all lower courts, which might otherwise have jurisdiction.

## CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

101.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "100," above, with the same force and effect as though fully set forth herein.

102.    By virtue of all of the aforesaid, the Defendants' conduct was and is so atrocious and malicious that a reasonable person should know or would have known that its effect was such as to cause the Plaintiff extreme emotional distress.

103.    As a result of the utterly vicious and incomprehensible nature of the actions taken against the Plaintiff by the Defendants, the Plaintiff has suffered and continues to suffer such distress that the conduct and actions rose and continues to rise to a level such that no reasonable person could be expected to endure.

104.    The Plaintiff has sustained, among other things, severe mental and physical distress, severe emotional and psychological distress, physical discomfort, loss of sleep, anxiety, and has sustained damages of a permanent, lasting nature.

105.    The Defendants have proximately caused the Plaintiff to sustain very substantial damages to be determined at a jury trial of this matter.

## CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

106.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "105," above, with the same force and effect as though fully set forth herein.

107.    The aforementioned conduct of the Defendants is extreme, outrageous, and unwarranted and constitutes a deliberate and persistent campaign of harassment and intimidation resulting in an intentional infliction of emotional distress on the Plaintiff.

19

108.   The Defendants intentionally, willfully, and recklessly permitted a deliberate and persistent campaign to threaten, intimidate, harass, and demean the Plaintiff for the intentional purpose of attaining her/their own gains and causing the Plaintiff grief and distress.

109.   The Defendants have intentionally inflicted severe emotional distress upon the Plaintiff by a course of outrageous and horrifying conduct, which has caused her to suffer humiliation; embarrassment; the loss of reputation; ridicule, as well as other inchoate and unspecified damages, as yet to be fully determined.

110.   The Defendants have specifically and intentionally acted as stated herein knowing or having reason to know that such actions would cause the Plaintiff to be emotionally hurt and distressed.

111.   The Defendants' conduct as related to the Plaintiff in these and the aforementioned incidents in the allegations common to all causes of action, were such that they knew that severe emotional distress would be certain or substantially certain to result, and in fact, engaged in the acts purposefully and specifically with the intent to cause distress in an effort to achieve their own ulterior motives. Such conduct was so malicious that it rises to a level that goes beyond all bounds of decency in a civilized society.

112.   The Defendants have specifically and intentionally caused the Plaintiff to suffer extreme emotional distress by outlandish and egregious statements and actions that are untrue.

113.   That as a result of the aforesaid intentional infliction of emotional distress, the Plaintiff has suffered and continues to suffer a level of distress that rises to a level such that no reasonable person could be expected to endure.

114.    The Defendants have proximately caused the Plaintiff to sustain very substantial damages to be determined at a jury trial of this matter.

**CAUSE OF ACTION FOR FRAUD/MISCONDUCT**

115.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "114," above, with the same force and effect as though fully set forth herein.

116.    Defendants' actions give rise to a cause of action for fraud due to the knowing and intentional and material misrepresentations made in connection with the allegations asserted against the Plaintiff in this matter.

117.    The Plaintiff established that Defendants' purposeful misconduct, tampering, concealing material existing facts, and false material representations constituted material false representations, which the Defendants knowingly made to and with regard to the Plaintiff with the intent to deceive. In addition, the Plaintiff and others justifiably relied on the veracity and accuracy of the Defendants' representations and was damaged as a result.

118.    Further, the Defendants' collective actions constitute acts of deception and manipulation, by omission, concealment, and commission, in undertaking to serve as the administrators, investigators, liaisons, and monitors of such subject complaints and procured, generated, or assisted in generating repeated false and misleading statements and information in violation of the Chancellor Regulations and State and Federal laws and the Plaintiff's due process and civil rights.

119.    As a result of these fraudulent acts of collusion among the Defendants, the Plaintiff is and will continue to be damaged.

120.    The Defendants made representations to the Plaintiff which were false, and known to be false by the Defendants, and that the representations were made for the purpose of inducing the Plaintiff to rely upon what she was being told, and ultimately resulted in her damages. Further, the Defendants purposefully violated the New York City Chancellor Regulations and the contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT), and attempted to conceal their wrongdoing by falsifying and filing erroneous documents more than four (4) years following the incident in order to sustain a fraudulent finding of corporal punishment against the Plaintiff.

121.    Further, as a result of these erroneous acts of the Defendants, the Plaintiff will be denied tenure, resulting in a termination of her employment.

122.    The Defendants have proximately caused the Plaintiff to sustain very substantial damages to be determined at a jury trial of this matter.

## CAUSE OF ACTION FOR BREACH OF CONTRACT

123.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "122," above, with the same force and effect as though fully set forth herein.

124.    The Defendants actions in this matter clearly and repeatedly violated the New York City Chancellor Regulations and the contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT).

125.    Further in this regard, the Plaintiff may initiate a breach of contract claim, as during the period of time when she would have otherwise unable to individually allege a breach of her collective bargaining agreement, she was notably on maternity leave and not

subject to fair representation by her union; nor would she be in a position to enforce the provisions of the collective bargaining agreement through the exhaustion of administrative remedies. The Plaintiff would have no other recourse for the adjudication of the Defendants' failure to abide by the appropriate regulations and the denial of her due process rights.

126.    The Plaintiff has demonstrated that she has duly performed all the conditions of the existing contract on her part.

127.    As a result, the Defendants have proximately caused the Plaintiff to sustain very substantial damages to be determined at a jury trial of this matter.

### AS AND FOR THE PLAINTIFF'S CAUSES OF ACTION FOR A VIOLATION OF PLAINTIFF'S CIVIL RIGHTS IN ACCORDANCE WITH 42 U.S.C. §§1983 and 1985 AND THE FOURTEENTH AMENDMENT; ART. 1, §11, NEW YORK STATE CONSTITUTION

128.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "127," above, with the same force and effect as though fully set forth herein.

129.    The Defendants, their employees and agents, owed the Plaintiff a duty under the due process clauses of 42 U.S.C. §1983, the Fourteenth Amendments to the U.S. Constitution and Article I, §11 of the New York State Constitution to ensure the Plaintiff's due process of law.

130.    Despite this well-defined duty, Defendants failed to act in accordance with the preservation of the Plaintiff's due process rights. The Plaintiff's subjected to an erroneous, unsubstantiated process and subjected to the placement of fabricated and unfounded charges in her permanent record with the City of New York Department of Education that can be publically viewed.

131.    Plaintiff is informed and believes that the acts of the Defendants, their

employees and agents, were intentional in failing to protect and preserve Plaintiff's civil rights and that, at minimum, Defendants were deliberately indifferent to the likelihood that the Plaintiff's rights would be violated without due process based on their purposeful and fraudulent acts.

132.    As a direct and proximate consequence of the acts of Defendants' agents and employees, the Plaintiff has suffered and continues to suffer loss of his civil rights and is entitled to compensatory damages for said loss.

133.    Moreover as to the claims arising under 42 U.S.C. § 1985, the Defendants herein have acted under color of State law.

134.    Further, while acting under color of state law, the Defendants deprived the Plaintiff of a federal statutory right. The Plaintiff has demonstrated a deprivation of liberty/"stigma-plus" claim that the Defendants made false a stigmatizing statements about her, wherein there was a state imposed burden, and the Plaintiff has experienced an adverse act, to wit: she has been publically "marked" and falsely sustained as having committed an act of corporal punishment against a child; a physical act akin to child abuse and/or endangerment that will prevent her from working with the children or the New York City Department of Education in any capacity. Further, there is no post-deprivation remedy that would exonerate her, as that false an inappropriate, public characterization is a permanent part of her teaching record. The Plaintiff has no other adequate remedy at law or in equity.

135.    Furthermore, under *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), a municipal government can be held liable under Section 1983 if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be

those of the municipality. An employee must be acting pursuant to a municipal "policy." To establish a municipal "policy," a plaintiff must prove that the municipal action was (I) taken with the requisite degree of culpability and (ii) causally linked to the deprivation of a federal right. See, also, Amendment 14 of the United States Constitution. The actions and statements of these Defendants are indicative of a pattern of such behavior against non-tenured teachers.

136.     The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff, for their credibility, veracity, and reliability, in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against faculty members; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the New York City Chancellor Regulations and the contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT).

137.     Due to the negligence of the Defendants, the Plaintiff has been significantly damaged. The Plaintiff's reputation as a teacher has been irreparably and permanently damaged, the extent of which cannot be measured at this time. Her professional reputation has been substantially and publically compromised.

138.    The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claim made against the Plaintiff; and for failing to appropriately grant Plaintiff tenure; among other things: in failing to possess the requisite judgment ordinarily exercised in investigating and monitoring claims against faculty members; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the New York City Chancellor Regulations and the contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT). Based on the foregoing, the Plaintiff has been damaged in the amount of $50 Million and 00/100 Dollars ($50,000,000.00), together with interest and the costs and disbursements of this action.

**WHEREFORE**, the Plaintiff demands (a) judgment against the Defendants on all causes of action for compensatory damages and punitive damages, together with interest, costs and disbursements of this action, in an amount to be determined at a jury trial of this matter, no less than $50 Million and 00/100 Dollars ($50,000,000.00); (b) that all costs of this action be taxed to the Defendants; and (c) that the Court grant to the Plaintiff such other

and further relief that the Court deems just and proper, including equitable relief.

Dated:  Garden City, New York
         March 12, 2020

                                        Yours, etc.,

                                        LAW OFFICES OF THOMAS F. LIOTTI, LLC
                                        By: Thomas F. Liotti, Esq.
                                        Attorneys for Plaintiff
                                        600 Old Country Road. Suite 530
                                        Garden City, New York 11530
                                        (516) 794-4700