Docket No. 19-CV-9646 (JGK)

-----------------------------------------------------------------X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

BRITTNEY BIEHNER a/k/a BRITTNEY REILLY,


                              Plaintiff,


            -against-


THE CITY OF NEW YORK;
NEW YORK CITY DEPARTMENT OF EDUCATION;
OMOTAYO CINEUS; STEVE TRAVERSIERE; and
"JOHN DOE AND JANE DOE # 1-100" said names
being fictitious, it being the intent of Plaintiff
to designate any and all individuals, officers, members,
agents, servants, and/or employees of the
aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally,


                              Defendants.

-----------------------------------------------------------------X



**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**



*LAW OFFICES OF THOMAS F. LIOTTI, LLC*
*By: Thomas F. Liotti, Esq.*
*Attorneys for Plaintiff*
*600 Old Country Road, Suite 530*
*Garden City, New York 11530*
*Phone: (516) 794-4700*
*Fax:  (516) 794-2816*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .................................................................................................. *i*

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ....................................................................................................1

ARGUMENT........................................................................................................................3

POINT I

    PLAINTIFF'S CLAIMS ARE NOT OUTSIDE
    OF THE STATUTE OF LIMITATIONS ........................................................................3

POINT II

    PLAINTIFF HAS STATED A VALID CLAIM UNDER THE FOURTEENTH
    AMENDMENT TO THE UNITED STATES CONSTITUTION...................................7

POINT III

    PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM OF MUNICIPAL
    LIABILITY UNDER 42 USC § 1983 ...........................................................................10

POINT IV

    PLAINTIFF HAS STATED A CLAIM UNDER 42 USC § 1985.................................11

POINT V

    PLAINTIFF HAS SUFFICIENTLY PLEAD
    A BREACH OF CONTRACT CLAIM.........................................................................12

POINT VI

    PLAINTIFF HAS SUFFICIENTLY STATED
    A CLAIM OF DEFAMATION ....................................................................................15

POINT VII

    PLAINTIFF HAS SUFFICIENTLY STATED
    A CLAIM OF FRAUD .................................................................................................17

POINT VIII

      PLAINTIFF'S EMOTIONAL DISTRESS
      CLAIMS SHALL SURVIVE DISMISSAL  ...............................................................20

POINT IX

      PLAINTIFF HAS PROPERLY PLEAD ALL CAUSES OF ACTIONAGAINST
      THE DEPARTMENT OF EDUCATION  ...................................................................22

CONCLUSION.........................................................................................................................23

CERTIFICATION OF COMPLIANCE ...................................................................................24

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE

- ▪ FEDERAL CASES

*Abramson v. Pataki*, 278 F.3d 93, 103 (2d Cir.2002) ................................................9

*Babbar v. Ebadi*, 2000 U.S. App. LEXIS 11798 (10th Cir. 2000) .........................................11

*Baden v. Koch*, 799 F.2d 825, 830–31 (2d Cir.1986) .........................................................8, 9

*Bailey v. Glover*, 88 U.S. 342, 349, 22 L. Ed. 636 (1874) .........................................................6

*Bloom v. Fox News of LA*, 528 F. Supp. 2d 69, (EDNY 2007) .............................................20

*Board of Education, Commack Union Free Sch. Dist. v. Ambach*,
70 N.Y.2d 501, 508, 517 N.E.2d 509, 522 N.Y.S.2d 831 (1987) .........................................13

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709,
33 L. Ed. 2d 548 (1972) ........................................................................................................7

*Brown v. State of New York*, 89 N.Y.2d 172 (N.Y. 1996) ........................................................7

*Buffalo Retired Teachers 91-Buffalo Retired Teachers 91-94 Alliance v. Board of Educ.*,
261 A.D.2d 824, 689 N.Y.S.2d 562, 565 (4th Dep't 1999) ...................................................13

*Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) ...............................9

*Crabtree v. Muchmore*, 904 F.2d 1475, 1476 (10th Cir. 1990) .............................................11

*Daniels v. City of New* York, 2007 U.S. Dist. LEXIS 50918, at 43 (S.D.N.Y. 2007) ...........13

*DLT Resources, Inc., v. Credit Lyonnais Rouse, Ltd.*,
2001 U.S. Dist. LEXIS 87, 2001 WL 25695 (S.D.N.Y. 2001) .................................................6

*Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 632 (2d Cir.1996) ...........9

*Fischer v. Maloney*, 43 NY2d 553, 558 [1978] ....................................................................22

*Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) .....................12

*Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 610 (2d Cir.1983) ......................................8

| CASES | PAGE |
|---|---|

- **FEDERAL CASES (continued)**

*Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790,
29 L. Ed. 2d 338, 1971 U.S. LEXIS 3774,
9 Fair Empl. Prac. Cas. (BNA) 1196, 3 Empl. Prac. Dec. (CCH) P8284 ...............................11

*In re Merrill Lynch Limited Partnerships Litigation*, 154 F.3d 56, 60 (2d Cir. 1998) .............6

*In re Nine West Shoes Antitrust Litigation*, 80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000) ...........7

*Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111 (10th Cir. 1991) ..........11

*Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 n. 2 (2d Cir.1984) .........................5

*Kelly v. Chase Manhattan Bank*, (717 F. Supp. 227, 235 (SDNY) .......................................21

*Maslan v. American Airlines, Inc.*, 885 F. Supp. 90, 93 (1995) .................................................5

*Monell v. Department of Social Serv.*, 436 U.S. 658 (1978) ...................................................10

*O'Neill v. City of Auburn*, 23 F.3d 685, 691 (2d Cir.1994) .......................................................9

*Penn Warranty Corp. v. DiGiovanni*, 2005 NY Slip Op 25449,
10 Misc3d 998 (2005) ................................................................................................................16

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ..................................................................................15

*Rotella v. Wood*, 528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047, 2000
U.S. LEXIS 1537, 68 U.S.L.W. 4153, 2000 Cal. Daily Op. Service 1357,
2000 Daily Journal DAR 1905, 2000 Colo. J. C.A.R. 952,
13 Fla. L. Weekly Fed. S 127 ......................................................................................................6

*Sciolino v. Newport News*, US-2229 (4th Cir. Mar. 12, 2007) .................................................9

*Singleton v. New York*, 632 F.2d 185, 191, 1980 U.S. App. LEXIS 13683 ............................3

*State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065 (2d Cir. 1988)
cert. denied, 488 U.S. 848, 102 L. Ed. 2d 101, 109 S. Ct. 128 (1988) ................................6, 7

*United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S. Ct. 1559
67 L. Ed. 2d 732 (1981) .............................................................................................................13

CASES                                                                                    PAGE

- FEDERAL CASES (continued)

*Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir.1994) .................................................9

*Williams v. City of New York*, 2014 US Dist. LEXIS 49837
(SDNY Mar. 26, 2014), aff'd, 602 Fed. Appx. 28 (2d Cir. 2015) .........................................22

- STATE CASES

*Chapadeau v. Utica Observer-Dispatch*, 38 NY2d 196, 199 (1975) ....................................20

*Hecht v. Kaplan*, 221 A.D.2d 100, 105, 645 N.Y.S.2d 51......................................................21

*Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 478 N.Y.S.2d 838, 467 N.E.2d 502 ..................21

*Johnson v. State of New York*, 37 N.Y.2d 378, 383, 372 N.Y.S.2d 638, 334 N.E.2d 590.......21

*Kronos, Inc. v. AVX Corp.*, 595 N.Y.S.2d 931, 612 N.E.2d at 292 .........................................4

*Lauer v. City of New York*, 659 N.Y.S.2d 57......................................................................21

*Murphy v. Am. Home Products Corp.*, 58 NY2d 293, 303 [1983] .........................................20

*Pelaez v. Seide*, 778 NYS2d 111, 117 (2004) .....................................................................21

*Rivera v. Wyckoff Hgts. Hosp.*, 184 A.D.2d 558, 560, 584 N.Y.S.2d 648) ...........................21

*Romano v. Romano*, 19 N.Y.2d 444, 280 N.Y.S.2d 570, 227 N.E.2d 389, 391 (1967) ..........5

*Santana v. Leith*, 117 AD3d 711, 712 [2d Dept. 2014] .........................................................20

*Sheila C. v. Povich*, 11 AD3d 120, 131 [1st Dept. 2004] .....................................................20

*Valdez v. City of New York*, 936 NYS2d at 592 ...................................................................21

STATUTES AND LAW                                                                       PAGE

14th Amendment of the United States Constitution.................................................................10

42 U.S.C. §1983...................................................................................................................3

42 U.S.C. § 1985.................................................................................................................11

CPLR § 203(g) .....................................................................................................................4

STATUTES AND LAW                                          PAGE

Fed. R. Civ. P. 12(b)(6).................................................................................................1

L 2002, ch 91 .......................................................................................................23

NY Ed Law § 2950-g(2) ........................................................................................22

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this Memorandum of Law in opposition to Defendants' (Omotayo Cineus, City of New York, New York City Department of Education, and Steve Traversiere), Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Defendants' motion is a thinly-veiled attempt to reframe Plaintiff's case into something that it is not and redirect this Court's attention from the egregious and unscrupulous actions and behaviors of these Defendants. In a confusing presentation of misguided and misstated facts, Defendants' papers ignore the four corners of the Amended Verified Complaint and disregard the fact that the detailed factual allegations in the Verified Complaint are to be accepted as true. Defendants disingenuously argue that the 2013 events are outside of the three (3) year statute of limitations for most claims. Likewise, Defendants fail to sufficiently establish that the Plaintiff failed to state a claim under the Fourteenth Amendment to the United States Constitution or New York Laws concerning defamation and breach of contract. Moreover, Defendants' argument that the City of New York is a separate legal entity from the DOE, do not justify a dismissal of the Amended Complaint.

## STATEMENT OF FACTS

The history of this case is somewhat protracted. Plaintiff is a dedicated, effective, and highly respected and highly educated, middle school teacher employed with the Department of Education at the Catherine and Count Basie Middle School 72, in Queens County, New York and consistently rated effective with an overall satisfactory rating in her performance as a probationary teacher. While the underlying issues in this matter initially commenced during the Spring semester of the 2012-2013 school year, when there began a continuing pattern of

1

erroneously targeting Plaintiff for unwarranted disciplinary action, Plaintiff did not become aware of what had been subsequently perpetrated against her until a later point in time.

Historically, on May 21, 2013, Plaintiff received a letter from Defendant, Principal, Omotayo Cineus, (hereinafter referred to individually as "Principal Cineus"), wherein Plaintiff was advised of a conference relating to alleged disciplinary action, but contained no other information. This incomprehensible communication resulted in a meeting with Principal Cineus to discuss alleged absences of Plaintiff. As a result, a subsequent letter from Principal Cineus, allegedly summarized this meeting and erroneously discussed Plaintiff's alleged absences and further erroneously proposed that due to a family medical situation and more potential lateness and absences, a leave of absence would be sought by Plaintiff for the remainder of the school year. This was entirely inaccurate; Plaintiff was not seeking a leave of absence. As a result, in this regard, Plaintiff was inexplicably subjected to unnecessary disciplinary action with regard to six (6) excused absences, for which she had already provided doctor's notes. Parenthetically, teachers are permitted ten (10) absences per school year; therefore, even if unexcused, the six absences were below the threshold of what was otherwise permissible.

Subsequently, and predominantly the subject and basis of these claims, in late 2018, Plaintiff learned of what ensued concerning an alleged incident that occurred on June 11, 2013, involving a student in her class, wherein, Plaintiff was accused of having forcibly taken a shoe, (hereinafter referred to as the "shoe incident"). What followed was Plaintiff's discovery of numerous instances of Defendants subversive tactics and blatant violations of the Chancellor Regulations and her due process rights.

Defendants' negligent and fraudulent actions and misconduct were not discovered by Plaintiff until on or about October 17, 2018, when while out on maternity leave, Plaintiff

exercised her contractual right to duplicate the contents of her personnel file. In the file, among other things, Plaintiff, discovered, for the first time, a letter dated June 20, 2013, summarizing a meeting concerning the June 11, 2013 incident, together with more items that contractually do not belong in her file, and further demonstrated damage to Plaintiff's professional integrity and her professional name, and an intentional disregard and violation of her rights.

The events as outlined in further detail in Plaintiff's Amended Verified Compliant annexed hereto as **Exhibit A**, and perpetrated by Defendants herein, appropriately demonstrate claims alleging a violation of Plaintiff's civil rights and due process and of defamation, negligence, breach of contract, negligent and intentional infliction of emotional distress, and fraud and misconduct on the part of Defendants.

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS ARE NOT OUTSIDE OF THE STATUTE OF LIMITATIONS

In order to promote its argument that Plaintiff's claims are outside of the applicable statute of limitations, Defendants erroneously maintain that nearly all of Plaintiff's allegations concern the June, 2013 incident and are time barred.

It should be noted that under Federal law, a claim of violation of 42 U.S.C. §1983 accrues at "*that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action*." <u>See</u>, *Singleton v. New York*, 632 F.2d 185, 191, 1980 U.S. App. LEXIS 13683. In this instance, the point in time when Plaintiff knew or had reason to know of the injury, which is the basis of this action, was not until she first discovered the specious disciplinary material that had been unknowingly placed in her personnel file by Defendants concerning allegations of "corporal punishment." Further, subsequently, Plaintiff did not learn what had

erroneously been placed into her permanent DOE record until February 15, 2019, when she received the response to her Freedom of Information Request (FOIL) from the DOE. It was at that time that she first learned that the DOE records reflect a sustained and closed corporal punishment investigation from the June, 2013 incident, which Plaintiff knew nothing about.

Defendants' claims that Plaintiff "*had reason to know*" that there was an investigation concerning the "shoe incident" is wholly disingenuous. Plaintiff has asserted that on or about June 12, 2013, she received a letter from Principal Cineus, wherein she was advised of the scheduling of a conference relating to an alleged disciplinary action. See, Exhibit A at paragraph 26. There was never any indication of an allegation of "corporal punishment" relating to Plaintiff by anyone. See, *Kronos, Inc. v. AVX Corp.*, 595 N.Y.S.2d 931, 612 N.E.2d at 292 (in tort causes of action "accrual occurs when the claim becomes enforceable, i.e., when all elements can be truthfully alleged in a complaint"). The New York legislature codified the accrual rule in § 203(g):

> "[W]here the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer." See, CPLR § 203(g).

Markedly, Plaintiff did not become aware of an allegation of "corporal punishment" against her until she examined her personnel file in October, 2018 (more than five (5) years after the event is alleged to have occurred). Defendants attempt to disingenuously conceal their wrong-doing by asserting that "Plaintiff had knowledge of an investigation within days of the event;" she did not. *There was never any indication of an allegation of corporal punishment to the Plaintiff by anyone.* There is no evidence of an Office of Special Investigation (OSI) case,

4

(except, for a form addressed to Office of Case Assessment and Review dated July 10, 2017 (**four (4) years** past the date of the accusation) signed by Principal Cineus, which was not made known to Plaintiff until her October 18, 2018 review of her personnel file). Further, no OSI case number was ever provided to Plaintiff by Principal Cineus or anyone; an OSI number is only shown on a form dated July 10, 2017, which was not made known to Plaintiff until the October 18, 2018 review of her personnel file. Principal Cineus failed in the duty to inform Plaintiff of an allegation of corporal punishment. An allegation of corporal punishment was not stated on the June 12, 2013 notice received by Plaintiff. Further, Plaintiff was never removed from her teaching assignment pending the outcome of any purported "corporal punishment investigation," nor was she ever informed in writing of the nature of any investigation. To her knowledge, there was no investigation ever commenced or completed. Thus, Plaintiff would not have ever had reason to know that material could and would be placed in her file concerning a corporal punishment investigation. Thus, Defendants' argument in this regard must fail.

Moreover, pursuant to New York law, the statute of limitations is an affirmative defense. See, *Romano v. Romano*, 19 N.Y.2d 444, 280 N.Y.S.2d 570, 227 N.E.2d 389, 391 (1967). "Questions of fact that arise in applying a statute of limitations are for the trier of fact." See, *Maslan v. American Airlines, Inc.*, 885 F. Supp. 90, 93 (1995) (citing, *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 n. 2 (2d Cir.1984).

Nonetheless, even assuming *arguendo* that this Court would otherwise consider these claims time barred, in cases, such as this, where a cause of action has been fraudulently concealed, the statute of limitations is tolled until the action is, or could have been, discovered through the exercise of due diligence.

A plaintiff may avail itself of the doctrine of equitable tolling if they can show that the elements of fraudulent concealment have been met. See, *In re Merrill Lynch Limited Partnerships Litigation*, 154 F.3d 56, 60 (2d Cir. 1998); *DLT Resources, Inc., v. Credit Lyonnais Rouse, Ltd.*, 2001 U.S. Dist. LEXIS 87, 2001 WL 25695 (S.D.N.Y. 2001). The Court in *Rotella v. Wood*, (528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047, 2000 U.S. LEXIS 1537, 68 U.S.L.W. 4153, 2000 Cal. Daily Op. Service 1357, 2000 Daily Journal DAR 1905, 2000 Colo. J. C.A.R. 952, 13 Fla. L. Weekly Fed. S 127), noted that…. "as a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling, and where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty…." Id. (citations omitted) (emphasis added). If a plaintiff can satisfy the elements of fraudulent concealment, then the statute of limitations may be tolled. A plaintiff may prove fraudulent concealment sufficient to toll the running of the statute of limitations if he establishes (1) that the defendant concealed from him/her the existence of his cause of action, (2) that he/she remained in ignorance of that cause of action until some point within three years of the commencement of his action, and (3) that his/her continuing ignorance was not attributable to a lack of diligence on his/her part. See, *State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065 (2d Cir. 1988) cert. denied, 488 U.S. 848, 102 L. Ed. 2d 101, 109 S. Ct. 128 (1988). The purpose of this doctrine "is to prevent a defendant from 'concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.'' See, *Hendrickson Bros.*, 840 F.2d at 1083 (quoting, *Bailey v. Glover*, 88 U.S. 342, 349, 22 L. Ed. 636 (1874)). A plaintiff may prove the concealment element in one of two ways: (a) the defendant took affirmative steps to prevent the plaintiff from discovering the claim or

injury, or (b) the wrong itself was of such a nature as to be self-concealing. <u>See</u>, *New York v. Hendrickson Bros., Inc.*, <u>supra</u>; <u>see also</u>, *In re Nine West Shoes Antitrust Litigation*, 80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000) ("Our Circuit has adopted the more lenient standard requiring plaintiffs to prove concealment by showing either that the defendants took affirmative steps to prevent plaintiffs' discovery of the conspiracy, or that the conspiracy itself was inherently self-concealing."). The unique facts and circumstances of this case clearly establish that Defendants took affirmative steps to prevent Plaintiff from discovering the claim or injury. Consequently, Plaintiff's claims are not time barred.

**POINT II**

**PLAINTIFF HAS STATED A VALID CLAIM UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

Plaintiff has established that she has suffered a deprivation of a constitutionally protected interests, in accordance with 42 USC § 1983. To have a property interest in a benefit an individual must show he is entitled to the benefit. <u>See</u>, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). Since Plaintiff is non-tenured, her claim of a property interest created by the probationary teachers' statutes must be evaluated in light of *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Further, the remedies recognized in *Brown v. State of New York*, 89 N.Y.2d 172 (N.Y. 1996), were the private interests that citizens harmed by constitutional violations have an avenue of redress and the public interest that future violations be deterred. Additionally, plaintiffs must establish grounds that entitled them to damages, in addition to proving their Constitutional rights have been violated. Notably, the money damages must be appropriate to ensure full realization of her asserted constitutional rights. Similar to case at hand, Plaintiff has suffered a multitude of damages, including but not limited to, being labeled as having inflicted corporal punishment on

a child; (with special needs, no less), which is akin to child abuse/mistreatment. Plaintiff was also entitled to the proper procedures as afforded to her in the Collective Bargaining Agreement between the DOE and UFT. As stated in Article 1 of the Contract, "The Board recognizes the Union as the exclusive bargaining representative of all those assigned as teachers in the regular day school instructional program…" Plaintiff's position in the DOE was "teacher" and she taught in the regular day school instructional program; therefore she was afforded the due process that was outlined in the contract for all teacher regardless if her status was probationary or tenured. Although a probationary teacher is not afforded a 3020-A procedure, they are still afforded other procedures directed by the Department of Education's regulations. Therefore, all Chancellor Regulations and their procedures are contractual, and as such, Plaintiff is afforded due process. As such, the New York City Chancellor Regulations and the Contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT), applied to Plaintiff's interest in her position regardless of permanency. Based on Defendants' actions and arguments regarding this point, it would seem that Defendants believe they are above the law and may partake in any procedure or lack thereof at their own whim regardless of such conduct constituting the violation of Plaintiff's rights.

Plaintiff has also established a deprivation of liberty interest. The Due Process Clause protects an individual from a government employer who disseminates false and defamatory information about the individual. See, *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 610 (2d Cir.1983). While the liberty interest at stake is the employee's reputation, the employee's liberty interest is implicated when the employer imposes such a stigma as to restrict the employee's ability to obtain future employment, in which case due process requires the government to provide the employee a name-clearing hearing. See, *Baden v. Koch*, 799 F.2d 825, 830–31 (2d

Cir.1986). This is commonly referred to as the "stigma plus" test. See, *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir.1994). To satisfy the "stigma-plus" test, Plaintiff must prove (1) that she was defamed; (2) that the defamation took place in the course of her termination; and (3) and that stigma foreclosed her from any future employment. See, *Abramson v. Pataki*, 278 F.3d 93, 103 (2d Cir.2002); *O'Neill v. City of Auburn*, 23 F.3d 685, 691 (2d Cir.1994); *Baden v. Koch*, 799 F.2d 825 (2d Cir. 1986) at 830–31. After showing each of the three elements of the "stigma-plus" test, Plaintiff must also show that the District failed to provide her a hearing consistent with her due process rights. That is, she must show harm caused by denial of a hearing. See, *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Defendants claim that Plaintiff has failed to establish a "stigma-plus" claim, which is inaccurate. Public employees who are not afforded the due process of the law are deprived of liberty interests. The reason being because damaging information tarnishes their reputations which in turn, makes it that much more difficult to secure employment.

Defamation is established if the statements made were false and publicly stigmatized Plaintiff. See, *Abramson*, supra, 278 F.3d at 101–02. "[S]tigmatizing allegations ... include charges going to professional competence when the charges are sufficiently serious." See, *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 632 (2d Cir.1996). The sustained charges against Plaintiff have placed a negative stigma on her reputation and will likely cause her tenure to be denied. Further, in *Sciolino v. Newport News*, US-2229 (4th Cir. Mar. 12, 2007), the court concluded that an employee sufficiently meets the second element when they allege that prospective employers are likely to see the stigmatizing allegations. Plaintiff has sufficiently alleged that the erroneous sustaining of a finding of "corporal punishment" on her permanent record with the Department of Education would be seen by anyone reviewing her

9

record and will prevent her from working with children. For this reason, Defendants' argument must fail.

## POINT III

### <u>PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM OF MUNICIPAL LIABILITY UNDER 42 USC § 1983</u>

Under *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), a municipal government can be held liable under Section 1983 if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality. An employee must be acting pursuant to a municipal "policy." To establish a municipal "policy," a plaintiff must prove that the municipal action was (i) taken with the requisite degree of culpability and (ii) causally linked to the deprivation of a federal right. <u>See</u>, <u>also</u>, Amendment 14 of the United States Constitution. The specific actions and statements of these Defendants are indicative of a pattern of behavior against non-tenured teachers. As a non-tenured teacher, Plaintiff was not afforded a hearing or other fact-finding procedure that would have permitted a proper, controlled, and supervised evaluation and review of the allegations presented and an opportunity for her to learn what action was being taken against her. Here, there is no check and balance of the authority of the administrators in this regard; they are free to disregard proper protocol and ignore Plaintiff's basic rights, with no accountability. Plaintiff's claims clearly identify a violation of her rights. The municipality cannot use this argument as both a "sword and shield" against Plaintiff.

Moreover, deliberate indifference has been clearly established by Plaintiff. There was an obvious, conscious choice to disregard the protocols and manipulate and fabricate the information to uphold a finding of corporal punishment against Plaintiff. The pleadings

demonstrate that Defendants were more than merely negligent in their actions and behavior; ignoring all proper protocols and submitting outdated and fabricated documents in an attempt to sustain a finding of corporal punishment against Plaintiff. Thus, Plaintiff's claim has been sufficiently plead, and Defendants' argument must fail.

**POINT IV**

**PLAINTIFF HAS STATED A CLAIM UNDER 42 USC § 1985**

As to the claims arising under 42 U.S.C. § 1985, Defendants herein have acted under color of State law. Plaintiff's pleadings, in this regard, demonstrate the existence of a conspiracy to improperly sustain a finding of corporal punishment against her; nonetheless, the existence of a conspiracy may also be inferred from the surrounding circumstances. There has been a demonstration of a concerted action and motive to deprive Plaintiff of "equal protection or equal privileges and immunities." In *Babbar v. Ebadi*, 2000 U.S. App. LEXIS 11798 (10th Cir. 2000), the Court reasoned that a factual basis may support the existence of the defining elements of a conspiracy - agreement and concerted action. See also, *Crabtree v. Muchmore*, 904 F.2d 1475, 1476 (10th Cir. 1990). In that regard, in *Babbar*, supra, indirect evidence was presented showing a meeting of the minds to deny the plaintiff tenure by showing that members of a tenure committee accepted a letter without question and upper-level members of the administration "rubber-stamped" the committee's recommendation. While Section 1985(3) does not necessarily apply to all tortious, conspiratorial interferences with the rights of others, (quoting, *Griffin*, 403 U.S. 88, 101-02, 91 S. Ct. 1790, 29 L. Ed. 2d 338), to survive a dismissal a plaintiff need only show only that he/she was treated differently than a similarly-situated individual. See, *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111 (10th Cir. 1991). In this regard, Defendants' arguments must fail.

# POINT V

## PLAINTIFF HAS SUFFICIENT PLEAD A BREACH OF CONTRACT CLAIM

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." See, *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). Plaintiff has properly plead a claim for breach of contract, establishing that the actions of Defendants in this instance breached the contract in existence between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT), by *inter alia*, failing to properly provide her with the required notices, failing to follow proper procedure, and inappropriately placing material critical of a teacher in her file without her having an opportunity to receive and respond to such material.

While, Defendants argue that Plaintiff lacks standing to initiate a breach of contract claim, as it is generally the Union, and not the employee, who must initiate a breach of contract claim in New York, there is, nonetheless, an adequate demonstration that Plaintiff was out on a leave of absence, and therefore, not subject to the representation of her Union during the time of the accrual of her claims herein. Further, while Defendants disingenuously argue that the DOE-UFT Collective Bargaining Agreement does not specifically exclude teachers on leave from Union representation, this argument is conclusory and self-serving and does not establish with any certainty that teachers on leave are included in Union representation. Moreover, it certainly could not be anticipated that claims such as these would arise, while an employee was on a leave of absence from employment. Certainly, the Agreement's silence on such an exclusion is not indicative that the Union would represent Plaintiff's interests in this regard.

Moreover, in examining these events, assuming that Defendants were veracious and conscientious in their reporting and other obligations, the Union breached its duty of fair representation by failing to advise Plaintiff that any corporal punishment allegations were being pursued, nor did they seek any reprisal for these egregious and unlawful acts perpetrated upon Plaintiff. <u>See</u>, *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S. Ct. 1559, 67 L. Ed. 2d 732 (1981); *Daniels v. City of New* York, 2007 U.S. Dist. LEXIS 50918, at *43 (S.D.N.Y. 2007); *Board of Education, Commack Union Free Sch. Dist. v. Ambach*, 70 N.Y.2d 501, 508, 517 N.E.2d 509, 522 N.Y.S.2d 831 (1987); *Buffalo Retired Teachers 91-Buffalo Retired Teachers 91-94 Alliance v. Board of Educ.*, 261 A.D.2d 824, 689 N.Y.S.2d 562, 565 (4th Dep't 1999).

Additionally, contrary to Defendants' assertions, Plaintiff has clearly identified the provisions of the Collective Bargaining Agreement that have been violated by Defendants' actions, to wit:

- At paragraph 29 of the Amended Verified Complaint, it was identified that Principal Cineus did flagrantly violate the rule the Regulation of the Chancellor - A-420, Section IV, (B).

There is no evidence of Defendants completing this stated task, or of an Office of Special Investigation (OSI) case, (except, for the July 10, 2017 form to Office of Case Assessment and Review, which was not seen by Plaintiff until her October 18, 2018 review of her personnel file), which is signed by Principal Cineus and dated **four (4) years** past the date of the accusation.

- At paragraph 31 of the Amended Verified Complaint, it was identified that the Principal Cineus did flagrantly violate the Regulation of the Chancellor - A-420, Section IV section C.

No OSI case number was ever provided to Plaintiff; an OSI number is only shown on a form dated July 10, 2017, which was not seen by Plaintiff until her October 18, 2018 review of her personnel file.

- At paragraph 33 of the Amended Verified Complaint, it was identified that Principal Cineus did flagrantly violate the Regulation of the Chancellor - A-420, Section IV (D).

Plaintiff was never advised of any such complaint of corporal punishment made directly by the parent and/or student through OSI's online reporting system or by contacting OSI.

- At paragraph 35 of the Amended Verified Complaint, it was identified that Principal Cineus did flagrantly violate the Regulation of the Chancellor - A-420.

- At paragraph 36 of the Amended Verified Complaint, it was identified that Principal Cineus did flagrantly violate the Regulation of the Chancellor - A-420, Section VI, relating to investigations.

- At paragraphs 37 and 38 of the Amended Verified Complaint, it was identified that Principal Cineus did flagrantly violate the Regulation of the Chancellor - A-420, Section VI.

Further, both Principal Cineus and Assistant Principal Traversiere failed in their duty to inform Plaintiff of any allegation of corporal punishment. An allegation of corporal punishment was <u>not</u> stated on the June 12, 2013 notice received by Plaintiff. Plaintiff was <u>not</u> provided with 48 hour written notice of the right to appear with Union representation at an investigative interview <u>to discuss an allegation of corporal punishment</u>. The letter dated June 20, 2013, explains that the meeting with Plaintiff and her Union representative did not take place until June 19, 2013, which is eight (8) days after the alleged accusations. Plaintiff was only advised of an incident that occurred at the meeting with the principal on or about June 19, 2013. Plaintiff never

14

waived her right to 48-hour notice, nor did she sign any documents relating to this accusation. See, Exhibit A, at paragraphs 40-42.

Plaintiff was never permitted to provide a statement concerning an allegation of corporal punishment. See, Regulation of the Chancellor, A-420, Section IV, (B), supra, "[P]rincipal or designee must **immediately** report all allegations of corporal punishment of students by DOE employees, custodial workers, vendors, consultants, CBO staff and similar individuals to OSI **within one school day of learning of the allegation**. See, Exhibit A, at paragraph 43.

Notably, Plaintiff was never removed from her assignment pending the outcome of any "corporal punishment investigation," nor was she ever informed in writing of the nature of any corporal punishment investigation. To her knowledge, there was no such investigation ever completed.

Plaintiff **never** reviewed and signed a privacy acknowledgment that she will not disclose the contents of the statements or retaliate against the author(s) of the statements. Upon information and belief, Plaintiff's UFT Union representative was also not provided any opportunity to review and sign any such privacy acknowledgment.

Based on the foregoing, Plaintiff has adequately alleged that she was unfairly treated by these specific violations, and Defendants should not be permitted to escape liability. Thus, Plaintiff's breach of contract claim should be upheld.

**POINT VI**

**PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM OF DEFAMATION**

The hallmark of a defamation claim is reputational harm. Former United States Supreme Court Justice, Potter Stewart wrote in *Rosenblatt v. Baer*, 383 U.S. 75 (1966), that the essence of a defamation claim is the right to protect one's good name. According to Justice Stewart, this

tort "reflects no more than our basic concept of the essential dignity and worth of every human being — a concept at the root of any decent system of ordered liberty." Id. It bears mentioning that Under New York law, some written statements are considered defamation (libel) *per se* if they "(1) charge plaintiff with a serious crime; (2) tend to injure plaintiff in its business, trade or profession; (3) [communicate that] plaintiff has some loathsome disease; or (4) impute unchastity." See, *Penn Warranty Corp. v. DiGiovanni*, 2005 NY Slip Op 25449 10 Misc3d 998 (2005). Such statements are presumed to cause injury, so a separate showing of harm is not necessary. Here, the facts as presented accuse Plaintiff of having committed an act of corporal punishment; forcibly taking a student's shoe is akin to child abuse and endangerment and the false permanent labeling of Plaintiff as having committed corporal punishment, and unlawfully sustaining that she "*pushed and grabbed physical contact with a student"* in this regard has irreparably injured Plaintiff in her profession as a school teacher and otherwise.

Defendants have disingenuously and improperly sustained facts of this case by manipulating the system and falsifying documents in order to suit their own agenda. Defendants have relied upon the erroneous argument that the substance of the allegations and statement of findings are not falsehoods, and thus not defamatory. This is unsatisfactory. Plaintiff denied ever taking the shoe forcibly from the student, and others verified this version of the event. Nonetheless, these events were only included in Plaintiff's permanent record with the DOE through a series of fraudulent and improper acts perpetrated by Defendants.

As previously stated, there was never any indication of an allegation of corporal punishment to Plaintiff by anyone. There is no evidence of an Office of Special Investigation (OSI) case, (except, for a July 10, 2017 form to Office of Case Assessment and Review, which was not seen by Plaintiff until her October 18, 2018 review of her personnel file), and which is

16

curiously dated **four (4) years** past the date of the accusation. Plaintiff was never removed from her assignment pending the outcome of any "corporal punishment investigation," nor was she ever informed in writing of the nature of any investigation. To her knowledge, there was no investigation for this incident ever completed. Defendants cannot disregard every legal obligation and ethical responsibility and then rely upon those illegitimate findings in support of its position of truth. It is an utter travesty.

Defendants further disingenuously argue that transmission of information to individuals conducting an investigation cannot be considered defamation; nonetheless that is not what is being claimed herein. Aside from the fact that there was no legitimate investigation being conducted, unbeknownst to Plaintiff, an Office of Special Investigation Corporal Punishment Intake Form dated June 13, 2013, had been imputed into the New York City Department of Education record system, falsely containing the following description: "*pushed and grabbed physical contact with my student*." This is a falsity. As such, Plaintiff's record with the New York City Department of Education, contains false information regarding a "substantiated" allegation of corporal punishment against Plaintiff, which has and will cause her injury in her trade, business, and profession as a Middle School teacher, working with children. As such, Defendants' argument concerning defamation must also fail.

## POINT VII

## <u>PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM OF FRAUD</u>

Defendants disingenuously argue that Plaintiff's Amended Complaint fails to offer any specific details of the alleged fraud; however, this argument is without merit and should be disregarded by this Court. Plaintiff's complaint is wrought with specific accounts of the false material representations presented by Defendants as truth, as well as Defendants' misconduct in

manipulating and falsifying documents to accomplish their own agenda and concealing their own failures in abiding by the rules and regulations.

Plaintiff's Verified Compliant specifically sets forth these details with extreme specificity, for example, notably, at paragraphs 53-55, Plaintiff details how she discovered, <u>for the first time</u>, a five year (5) old letter dated June 20, 2013, summarizing the June 19, 2013 meeting, which was improperly present in Plaintiff's file. <u>See</u>, Exhibit A. Further, she discovered there more items in the file that contractually did not belong there, to wit: a "Facsimile Transmittal Sheet" <u>dated July 23, 2013</u>, and addressed to an individual named "Chester Hawkins" (unknown to Plaintiff and whose position is not identified in the document), from Principal Cineus, for the purpose of providing seven (7) unidentified pages for review. In addition, a "Facsimile Transmission Log" purportedly addressed to Plaintiff, at an erroneous fax number (631) 696-3867, on <u>June 27, 2013</u>, and marked urgent and for review. The seven (7) unidentified pages were not present in the file. <u>See</u>, Exhibit A, at paragraph 53. Lastly, with regard to what was identified therein as "OSI Case No. 13-05342x," after reviewing the Principal's file and other school records, certain documents were identified in a form dated <u>July 10, 2017</u>, as being **unable** to be located. <u>See</u>, Exhibit A, at paragraph 54.

Defendants' transparent argument that these facts merely represent that four years after the incident, certain documents from the investigation could not be found, is entirely disingenuous. Certainly there would be no need to provide these documents more than four years later, as these are the documents required to be submitted in the first instance. These facts substantiate the claim that the Principal Cineus failed to follow the Chancellor Regulation A-420 and Article 20 of the Contract, as a true corporal punishment investigation would mandate a presentation of these documents, nonetheless, a finding of corporal punishment was sustained

against Plaintiff. Further, curiously no explanation is provided for why this communications was being sent more than four (4) years following the alleged incident. See, Exhibit A, at paragraph 61.

Defendants knew, but ignored the importance of properly verifying the damaging and incendiary accusations against Plaintiff prior to imputing a complaint with the Office of Special Investigation and sustaining the allegations in writing without providing the proper notification to Plaintiff. See, Exhibit A, at paragraph 69. Plaintiff has sufficiently established that Defendants' purposeful misconduct, in tampering, concealing material existing facts, and making false material representations regarding an improperly sustained finding of "corporal punishment" constituted material false representations, which Defendants knowingly made to and with regard to Plaintiff with the intent to deceive. In addition, Plaintiff and others justifiably relied on the veracity and accuracy of Defendants' representations and was damaged as a result. This is clearly set forth in the pleadings.

Further, Defendants' collective actions constitute acts of deception and manipulation, by omission, concealment, and commission, in undertaking to serve as the administrators, investigators, liaisons, and monitors of such subject complaints and procured, generated, or assisted in generating repeated false and misleading statements and information in violation of the Chancellor Regulations and State and Federal laws and the Plaintiff's due process and civil rights. As such, Defendants fail in their attempt to argue that Plaintiff failed to plead any facts which state a claim for fraud.

## POINT VIII

## PLAINTIFF'S EMOTIONAL DISTRESS CLAIMS SHALL SURVIVE DISMISSAL

Plaintiff has more than established that Defendants acted in a "grossly irresponsible manner without due consideration for the standards ordinarily followed by responsible parties in their position." See, *Chapadeau v. Utica Observer-Dispatch*, 38 NY2d 196, 199 (1975); see also, *Bloom v. Fox News of LA*, 528 F. Supp. 2d 69, (EDNY 2007). In order to support a claim for negligent infliction of emotional distress, Plaintiff is also required to allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See, *Murphy v. Am. Home Products Corp.*, 58 NY2d 293, 303 [1983]. Defendants' extreme and outrageous conduct in these circumstances has been clearly alleged, and thus shall survive a motion to dismiss." See, *Sheila C. v. Povich*, 11 AD3d 120, 131 [1st Dept. 2004]. As a claim for negligent infliction of emotional distress arises out of a claim of negligence, Plaintiff has alleged that Defendants owed Plaintiff a duty and the breach of that duty owed to Plaintiff caused Plaintiff's damages. See, *Santana v. Leith*, 117 AD3d 711, 712 [2d Dept. 2014]. Plaintiff has clearly identified the duty owed to her by Defendants. In order to qualify as "extreme and outrageous," the conduct at issue must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See, *Sheila C.*, supra. To falsify and tamper with official documents, so as to conceal their own misconduct and erroneously substantiating false claims, subjecting Plaintiff to public admonishment and ridicule, and negatively affecting her status and means of employment is egregious, extreme, and outrageous. Defendants furthered a false narrative, purporting it to be undisputed fact. As a result, Plaintiff's claims must stand.

Defendants erroneously argue summarily that under New York law, claims for intentional infliction of emotional distress may not be brought against a government entity; nonetheless, this argument fails to consider those Defendants which fall within "any recognized orbit of duty upon which liability may be based." See, *Lauer v. City of New York*, 659 N.Y.S.2d 57, citing, *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 478 N.Y.S.2d 838, 467 N.E.2d 502; see, *Johnson v. State of New York*, 37 N.Y.2d 378, 383, 372 N.Y.S.2d 638, 334 N.E.2d 590; *Hecht v. Kaplan*, 221 A.D.2d 100, 105, 645 N.Y.S.2d 51; *Rivera v. Wyckoff Hgts. Hosp.*, 184 A.D.2d 558, 560, 584 N.Y.S.2d 648). In this regard, Plaintiff has sufficiently alleged a special relationship; she claims that Defendants were required to monitor, supervise and control, thereby creating a special relationship. A special relationship giving rise to a duty of care can be created in three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; and, (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation." See, *Valdez v. City of New York*, 936 NYS2d at 592; *Pelaez v. Seide*, 778 NYS2d 111, 117 (2004). Plaintiff has adequately alleged facts sufficient to demonstrate that she had a special relationship with municipal Defendants, such that they owed her a special duty. As to those claims brought against Defendants, Cineus and Traversiere, Plaintiff has sufficiently plead facts within the statute of limitations period that would state such a claim.

Moreover, Defendants' reliance upon *Kelly v. Chase Manhattan Bank*, (717 F. Supp. 227, 235 (SDNY)), is misguided and distinguishable from these facts, as Plaintiff's claims do not involve termination of an employee, *per se*, or "adverse employment decisions." These claims are the result of Defendants' purposeful, egregious acts and misconduct. They cannot be merely

classified as an "*adverse employment decision*" or "*erroneously conducting a corporal punishment investigation*;" to do so, would be overlooking the severity and corruptness of Defendants' purposeful actions.

Defendants further erroneously argue that Plaintiff cannot, as a matter of law, plead negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress, as they are duplicative of Plaintiff's defamation claims; nonetheless, the Court of Appeals considers merely the tort of intentional infliction of emotional distress and holds that is *likely* not available "where the conduct complained of falls well within the ambit of other traditional tort liability" See, *Fischer v. Maloney*, 43 NY2d 553, 558 [1978]). This analysis would reasonably require a review of the facts and circumstances of the claims, which could not as a matter of law, support a dismissal. Therefore, based on the foregoing, Plaintiff's allegations sufficiently demonstrate the conduct necessary to grant such claims.

**POINT IX**

**<u>PLAINTIFF HAS PROPERLY PLEAD ALL CAUSES OF ACTION
AGAINST THE DEPARTMENT OF EDUCATION</u>**

Defendant, Department of Education (DOE) is a department of the City of New York, and the Catherine and Count Basie Middle School 72, in Queens County, New York, where Plaintiff is employed, is operated by the New York City Department of Education (DOE). Defendants argue that the DOE and the City of New York are separate legal entities, and Plaintiff was employed by the DOE, and not the City of New York, and thus, the claims asserted against the City of New York should be dismissed, as the City is not liable for the actions of the DOE or its employees; however, this is true only <u>absent some action by the City itself</u>. See, NY Ed Law § 2950-g(2); <u>see also</u>, *Williams v. City of New York*, 2014 US Dist. LEXIS 49837 (SDNY Mar. 26, 2014), aff'd, 602 Fed. Appx. 28 (2d Cir. 2015). In this regard, it bears mentioning that

the Legislature amended the Education Law in 2002 to grant the Mayor greater control over public schools and limit the power of the DOE. See, L 2002, ch 91; he was appointed to operate New York City's public education system, a.k.a. the Department of Education. Unlike much of the rest of New York state, since 2002, the city's schools have not had elected school boards. They are instead consolidated under the auspices of the Mayor, who appoints the schools chancellor and sets policy through the Department of Education. Thus, there is arguably a sufficient nexus in this instance to connect the City and the DOE and its employees. Nonetheless, Plaintiff named and sufficiently plead all causes of action against the Department of Education, which is a department of the City of New York.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss Plaintiff's Amended Complaint, or in the alternative, grant leave to further amend the Verified Complaint, if necessary, together with such other and further relief to Plaintiff as this Court deems just and proper.

Dated: Garden City, New York
        April 21, 2020

Respectfully submitted,

LAW OFFICES OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq.
Attorneys for Plaintiff
600 Old Country Road, Suite 530
Garden City, New York 11530
Phone: (516) 794-4700
Fax:  (516) 794-2816

23

## CERTIFICATION OF COMPLIANCE

It is hereby certified that the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss was prepared on a computer and complies with the Court's formatting rules as set forth in the Individual Practices of Judge John G. Koeltl at paragraph 2(D), dated March 13, 2020. A proportionally spaced typeface was used, as follows:

| | |
|---|---|
| Name of typeface: | Times New Roman |
| Point size: | 12 |
| Line spacing: | Double |

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, proof of service, certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc., is 6,995.

Dated: Garden City, New York
        April 21, 2020

LAW OFFICES OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq.
Attorneys for Plaintiff
600 Old Country Road, Suite 530
Garden City, New York 11530
Phone: (516) 794-4700
Fax:  (516) 794-2816