UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

BRITTNEY BIEHNER,

                    Plaintiff,                        19-cv-9646 (JGK)

          - against -                                 MEMORANDUM OPINION AND
                                                      ORDER
CITY OF NEW YORK, ET AL.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, Brittney Biehner, a special education
teacher, brings this action against the City of New York (the
"City"), the New York City Department of Education ("DOE"),
Omotayo Cineus, Steve Traversiere, and John Does #1-100 alleging
various causes of action relating to an internal investigation
into her conduct with one of her students.  The defendants move
to dismiss the Amended Complaint pursuant to Federal Rule of
Civil Procedure 12(b)(6), arguing that the causes of action are
barred by the relevant statutes of limitations, and that the
plaintiff has failed to state a claim upon which relief can be
granted.  For the following reasons, the defendants' motion to
dismiss is **granted.**

                              I.

     The following facts are drawn from allegations set out in
the Amended Complaint ("Am. Compl.") and are accepted as true
for purposes of this motion to dismiss.

                               1

The plaintiff, Brittney Biehner, also known as Brittney Reilly, is a DOE teacher who taught at Middle School 72 in Queens, New York.  Am. Compl. ¶¶ 7, 18.  She was a probationary teacher, meaning she had not been granted tenure.  Id. ¶¶ 18, 49.  The plaintiff consistently received "satisfactory" ratings in her performance as a probationary teacher.  Id. ¶ 18.  In 2013-2014, the plaintiff was denied tenure, but was allowed to stay on as a probationary teacher.  Id. ¶ 49.  During the plaintiff's employment, defendant Omotayo Cineus was the school's principal and defendant Steve Traversiere was the assistant principal.  Id. ¶¶ 10-11.

In May 2013, the plaintiff had a disciplinary meeting with Principal Cineus to discuss her attendance record.  Id. ¶¶ 20-21.  While she had six absences that school year, teachers were permitted ten absences.  Id. ¶ 22.

A month later, in June 2013, the plaintiff had another disciplinary conference with Principal Cineus regarding an incident with one of her students.  Id. ¶¶ 22, 26.  Ms. Biehner implemented a policy with her students that if they needed to borrow classroom equipment, they needed to give one of their own items to Ms. Biehner temporarily, and the student's personal item would be returned to the student when the borrowed school equipment was returned to Ms. Biehner.  Id. ¶ 25.  On June 11, 2013, Ms. Biehner was accused of forcibly taking a student's

2

shoe in exchange for use of a folder.  Id. ¶ 24.  Ms. Biehner denies this allegation and alleged that students, to varying extents, corroborated that the shoe was given to Ms. Biehner willingly and without force.  See id. ¶ 28.  Principal Cineus sent Ms. Biehner a letter summoning her to a disciplinary conference and informing her that a union representative could be present for the meeting, but the letter did not use the explicit phrase "corporal punishment."  Id. ¶ 26.  On June 19, 2013, Principal Cineus met with Ms. Biehner and a union representative to discuss the incident.  Id. ¶¶ 41-42.

The United Federation of Teachers (the "UFT"), a union that represents teachers in New York City, and the DOE have a contract that includes standards relating to investigations of teachers.  See id. ¶¶ 55, 74. The plaintiff is not a party to that contract.

Principal Cineus and Assistant Principal Traversiere investigated the allegation.  Id. ¶¶ 27-28.  Multiple students who witnessed the event, including the student who alleged that the plaintiff forcibly took his shoe, gave written statements. Id.  The defendants never informed the plaintiff regarding the results of the investigation.  Id. ¶ 44.  The plaintiff alleges that, in conducting the investigation, the individual defendants did not comply with regulations issued by the New York City

Schools Chancellor and the contract between the UFT and the DOE. Id. ¶ 74.

In October 2018, while on maternity leave, the plaintiff reviewed her DOE personnel file and saw a letter dated June 20, 2013 sustaining the allegations of corporal punishment.  Id. ¶¶ 46, 53.  The letter was accompanied by a fax cover sheet, dated June 27, 2013 addressed to the plaintiff, but the plaintiff did not own a fax machine and she alleges that she never received the letter.  Id. ¶¶ 53-54.  Apart from the cover letter, the contents of the fax were not in the plaintiff's file.  Id.  The plaintiff's file also contained a July 23, 2013 cover sheet to a fax to Chester Hawkins, purporting to attach materials related to the corporal punishment investigation.  Id. ¶ 53.  Apart from the cover sheet, the contents of the fax were not in the plaintiff's file.  Id.  To obtain more information, the plaintiff submitted an information request pursuant to New York's Freedom of Information Law ("FOIL"), and she received responsive documents on February 15, 2019.  Id. ¶ 58.  One such responsive document, a June 13, 2013 Corporal Punishment Intake Form, showed a sustained and closed corporal punishment investigation regarding the June 2013 incident and stated that the plaintiff "pushed and grabbed" the student and "snatched [the] shoe off of [the student's] foot because he did not have his folder."  Id. ¶ 58.

4

Starting September 1, 2014, Ms. Biehner was on a leave of absence due to two pregnancies and an automobile accident.  Id. ¶ 50.  She was scheduled to return in August 2020 as a probationary teacher, at which point she would be reevaluated for tenure.  Id.  If she were denied tenure a second time, she would be terminated.  Id.  At the argument of the current motion, the plaintiff's counsel advised the Court that the plaintiff did not return to teaching at the beginning of the 2020-2021 school year and that there appears to be a dispute between the parties as to why she did not return.  However, the plaintiff's counsel represented that the plaintiff is not currently employed by the DOE.

The plaintiff filed this lawsuit on October 18, 2019.  The plaintiff has not named the union as a defendant, and the union has not brought suit on behalf of the plaintiff related to the plaintiff's claims in this case.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[1]  The Court's function on a motion to dismiss is "not to

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

**III.**

The plaintiff brings the following claims: (1) violation of
her constitutional right to due process pursuant to 42 U.S.C.
§ 1983; (2) conspiracy to violate her constitutional right to
due process pursuant to 42 U.S.C. § 1985; (3) defamation;
(4) breach of contract; (5) fraud; (6) intentional infliction of
emotional distress ("IIED"); (7) negligent infliction of
emotional distress ("NIED"); and (8) negligence.

**A. Sections 1983 & 1985**

The plaintiff's claims pursuant to Sections 1983 and 1985
fail because they are time barred and because the plaintiff has
failed to state a claim.

The limitations period for Section 1983 actions that accrue
in New York is three years.  Hogan v. Fischer, 738 F.3d 509, 517
(2d Cir. 2013) (citing N.Y. C.P.L.R. § 214 (McKinney 2013)); see
also Owens v. Okure, 488 U.S. 235, 240 (1989) (noting that
courts must "borrow and apply to all § 1983 claims the . . .
state statute of limitations" for personal-injury torts).  A
Section 1985 claim likewise has a three-year limitations period.
See, e.g., Meyer v. Frank, 550 F.2d 726, 728 n.5 (2d Cir. 1977);
Harrison v. Lutheran Med. Ctr., No. 05-cv-2059, 2010 WL 3924292,
at *5 (E.D.N.Y. Mar. 23, 2010), report and recommendation
adopted, 2010 WL 4038791 (E.D.N.Y. Sept. 29, 2010).  These
claims accrue "when the plaintiff knows or has reason to know of

the injury which is the basis of [the plaintiff's] action."
Hogan, 738 F.3d at 518 (quoting Pearl v. City of Long Beach, 296
F.3d 76, 80 (2d Cir. 2002)).

The plaintiff's claims arise out of a May 2013 disciplinary
hearing for excessive absences and an investigation relating to
the June 2013 incident involving her allegedly forcible taking
of a student's shoe.  While the plaintiff alleges not to have
known about the claimed due process violations until years
later, the plaintiff had a disciplinary meeting about the shoe
incident in June 2013, and thereby had reason to know of the
investigation.  See id.  In particular, the plaintiff knew that
she had a disciplinary hearing regarding the incident and that
the defendants collected statements from witnesses.  Based on
this information, she had reason to know there was an
investigation concerning her behavior, and she could have
accessed the specific information about the investigation, if
she chose to do so.  The plaintiff has not alleged that she
acted with any diligence to determine the outcome or progress of
the investigation or that she requested information regarding
the investigation and was rebuffed.  While the plaintiff alleges
that the defendants did not explicitly state there was an
investigation for "corporal punishment," the defendants held a
disciplinary hearing concerning the incident and told the
plaintiff the basis of their concerns.  Based on the meeting,

and the fact that she knew the defendants took statements of witnesses, the plaintiff had reason to know that the defendants engaged in the allegedly unconstitutional investigation, and the plaintiff did not allege any efforts to ascertain the results of that investigation.  The plaintiff had reason to know of the alleged due process violations in 2013, but she filed suit in 2019—significantly more than three years after the claims accrued.  Therefore, the plaintiff's Section 1983 and 1985 claims are time barred.

Moreover, the plaintiff has failed to state a claim pursuant to Sections 1983 and 1985.  To allege a Section 1983 claim for deprivation of due process under the Fourteenth Amendment, the plaintiff must allege (1) that she had a liberty or property interest in her employment, and (2) that she did not receive constitutionally adequate process before being deprived of those interests.  Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002); see also Men of Color Helping All Soc., Inc. v. City of Buffalo, 529 F. App'x 20, 23 (2d Cir. 2013). The plaintiff has failed to allege that she was deprived of a liberty or property interest without due process.

The plaintiff does not have a property interest in her position as a probationary teacher.  "Where state law defines an employment position as probationary, the employee lacks a legal claim of entitlement and therefore lacks a property interest in

the expectation of continued employment." Jannsen v. Condo, 101 F.3d 14, 16 (2d Cir. 1996). Moreover, "[w]here there is no property interest in the employment, there can be no property interest in the procedures that follow from the employment." Id. Because Ms. Biehner was a probationary teacher, she did not have a property interest in her continued employment. See, e.g., Rivera v. Cmty. Sch. Dist. Nine, 145 F. Supp. 2d 302, 306-07 (S.D.N.Y. 2001).

The plaintiff has also failed to plead adequately a deprivation of a liberty interest. The plaintiff's claim is one for loss of reputation. The loss of reputation without due process of law, in combination with the loss of a more tangible interest, is commonly referred to as a "stigma plus" claim. The "stigma" within a stigma plus claim is the loss of reputation, and the "plus" is the loss of a more tangible interest, such as employment. See Velez v. Levy, 401 F.3d 75, 87-88 (2d Cir. 2005); Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389, 394-95 (S.D.N.Y. 2009). "Because stigma plus is a species within the phylum of procedural due process claims," the plaintiff "must demonstrate that [the plaintiff's] liberty was deprived without due process of law." Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006).

In this case, the plaintiff has failed to plead adequately the "plus" required for a "stigma plus" claim. The plaintiff

was not terminated, suspended, or demoted based on the alleged
unconstitutional investigation.  She was permitted to keep her
post and pay until she took maternity leave, and the defendants
had offered the plaintiff her same position upon the conclusion
of her leave.  The plaintiff's assertion that the sustained
corporal punishment allegation will prevent her future job
opportunities is conjectural and undermined by the fact that she
retained the opportunity to resume her employment
notwithstanding the sustained allegation, and that she was
offered the same position after the conclusion of her maternity
leave.  Whatever happened at the beginning of the 2020-2021
school year as stated at the argument of the current motion is
not part of the complaint at issue.  Loss of reputation, without
alleging the loss of a more tangible interest is not sufficient
to state a claim pursuant to Section 1983.  See Balentine v.
Tremblay, 554 F. App'x 58, 60 (2d Cir. 2014).

     Furthermore, "the availability of adequate process defeats
a stigma plus claim."  Segal, 459 F.3d at 213.  This is often
done through a name-clearing hearing.  "[T]he hearing required
where a nontenured employee has been stigmatized in the course
of a decision to terminate [the employee's] employment is solely
to provide the person an opportunity to clear [the employee's]
name."  Codd v. Velger, 429 U.S. 624, 627 (1997) (per curiam);
Segal, 459 F.3d at 214 (holding that in cases involving "at-will

government employee[s], the availability of an adequate,
reasonably prompt, post-termination name-clearing hearing is
sufficient to defeat a stigma-plus claim"). In New York, an
Article 78 proceeding provides such a name-clearing hearing.
See Spang, 626 F. Supp. 2d at 397 (dismissing a stigma plus
claim because "courts have consistently held that Article 78
proceedings provide sufficient procedural protection as post-
deprivation name-clearing hearings") (collecting cases). The
plaintiff has not alleged that the name-clearing hearing was
insufficient to protect her reputation.

The plaintiff also alleges that the defendants engaged in a
pattern of problematic behavior toward non-tenured teachers and
that the DOE should be liable pursuant to Monell v. Dep't of
Soc. Servs. of City of New Yok, 436 U.S. 658 (1978). Monell
provides that "municipalities may be sued directly under § 1983
for constitutional deprivations inflicted upon private
individuals pursuant to a governmental custom, policy,
ordinance, regulation, or decision." Batista v. Rodriguez, 702
F.2d 393, 397 (2d Cir. 1983). Municipalities are not subject to
liability under theories of respondent superior, but rather on
the basis that their policies or customs "inflict[ed] the injury
upon the plaintiff." Id. "[T]o hold a city liable under § 1983
for the unconstitutional actions of its employees, a plaintiff
is required to plead and prove three elements: (1) an official

policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Id.; see also Seymore v. Dep't of Corr. Servs., No. 11-cv-2554, 2014 WL 641428, at *8 (S.D.N.Y. Feb. 18, 2014).[2]

Monell only "extends liability to a municipal organization where the organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  Segal, 459 F.3d at 219.  Where, as in this case, a plaintiff has failed to establish an underlying constitutional violation there can be no liability under Monell. Id.; see also Seymore, 2014 WL 641428, at *8.  In any event, the plaintiff's claims against the DOE fail because the plaintiff has failed to connect her asserted injuries to any policy, custom, or lack of training on the part of the DOE.  See id.; Benavides v. Grier, No. 09-cv-8600, 2011 WL 43521, at *3 (S.D.N.Y. Jan. 6, 2011); see also Estevez v. City of New York, No. 16-cv-73, 2017 WL 1167379, at *7 (S.D.N.Y. Mar. 28, 2017). While she asserts that Principal Cineus and Assistant Principal Traversiere departed from DOE guidelines in conducting the investigation into her corporal punishment of a student, she fails to allege a policy or custom that subjected her to a constitutional deprivation.  See Jones v. Town of E. Haven, 691

_____

[2] The DOE is a municipal organization and is only subject to liability under Section 1983 if the Monell requirements are satisfied. See Fierro v. New York City Dep't of Educ., 994 F. Supp. 2d 581, 588 (S.D.N.Y. Feb. 4, 2014).

F.3d 72, 81 (2d Cir. 2012) (isolated acts of municipal employees who do not make policy are insufficient for municipal liability).  Indeed, the fact that she is alleging that the defendants acted against school or DOE policy belies her claim that a municipal policy or custom is at issue.

The plaintiff also fails to establish municipal liability under a theory of municipal custom through deliberate indifference.  "A municipal policymaking official's deliberate indifference to the unconstitutional actions, or risk of unconstitutional actions, of municipal employees can in certain circumstances satisfy the test for a municipal custom, policy, or usage that is actionable under Section 1983."  Id.  In this case, the plaintiff does not allege that Principal Cineus or Assistant Principal Traversiere had any policymaking authority. And while principals may have some decisional authority with respect to school policies, they do not have such authority with respect to municipality policies, and therefore cannot be considered to have policymaking authority for Monell purposes. See Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 100-01 (2d Cir. 2020).

Accordingly, the plaintiff has failed to state a claim pursuant to Section 1983.

The plaintiff likewise has failed to state a claim pursuant to Section 1985.  Section 1985(3) prohibits "two or more

14

persons" from "consp[iring] . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under Section 1985(3), "a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).

Because "Section 1985(3) provides no substantive rights itself," a deprivation of the specified constitutional right is a required object of a conspiracy under Section 1985(3). Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). As discussed above, the plaintiff has not pleaded adequately any underlying violation of her constitutional rights. On that basis alone, the plaintiff's Section 1985 claim is insufficient.

Moreover, the plaintiff fails to plead that the defendants engaged in a conspiracy. "Under the 'intracorporate conspiracy' doctrine, the officers, agents and employees of a single corporate entity, each acting within the scope of [his or] her employment, are legally incapable of conspiring together."

Salgado v. City of New York, No. 00-cv-3667, 2001 WL 290051, at
*8 (S.D.N.Y. Mar. 26, 2001).  The plaintiff has not alleged that
individuals outside of the DOE participated in any conspiracy or
that the DOE employees were acting outside the scope of their
employment.  Because all the individual defendants were
employees of a single corporate entity acting within the scope
of their employment, they cannot have formed a conspiracy with
respect to the investigation.  See id.

Accordingly, the plaintiff failed to state a claim pursuant
to Section 1985.

### B. Defamation

The plaintiff alleges that the defendants defamed her in
their July 23, 2013 fax to Chester Hawkins, their June 27, 2013
fax addressed to the plaintiff, and the June 2013 Corporal
Punishment Intake Form that the plaintiff received in response
to her FOIL request.  The plaintiff's claim is time barred and
the plaintiff fails to plead a defamation claim adequately.

The limitations period for a defamation claim is one year
after publication of the defamatory statement.  See N.Y.
C.P.L.R. § 215(3).  The claim accrues when the allegedly
defamatory statements are published, not when the plaintiff
discovers the statements' publication.  Teneriello v. Travelers
Cos., 641 N.Y.S.2d 482, 483 (App. Div. 1996); see also Hanly v.
Powell Goldstein, L.L.P., 290 F. App'x 435, 439 (2d Cir. 2008).

16

Because all of the allegedly defamatory statements were published in 2013, the defamation claims based on those statements are time barred.

Moreover, the plaintiff's allegations are insufficient to state a defamation claim.  Pursuant to New York law, "[t]he elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation <u>per se</u>." <u>Kamchi v. Weissman</u>, 1 N.Y.S.3d 169, 180 (App. Div. 2014).  To state a claim for defamation, a complaint must "identify adequately who actually made the allegedly [defamatory] statements, when they were made and to whom they were communicated." <u>Mahmud v. Bon Secours Charity Health Sys.</u>, 289 F. Supp. 2d 466, 476 (S.D.N.Y. 2003).  "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." <u>Germain v. M&T Bank Corp.</u>, 111 F. Supp. 3d 506, 534 (S.D.N.Y. 2015).

The plaintiff alleges that she saw a fax cover sheet dated July 23, 2013, indicating the presence of seven additional pages, but that she has not seen those seven pages.  Because she does not know the content of those pages, she cannot plead adequately that they were defamatory.  Therefore, the plaintiff

cannot sustain a defamation claim based on the July 23, 2013 fax.

The allegations concerning the June 27, 2013 fax to the plaintiff suffer similar defects. The fax had a cover sheet along with unidentified pages, but the plaintiff has seen only the cover sheet. Because the plaintiff has alleged that she has not seen the unidentified pages, she cannot maintain a claim that they were defamatory. Moreover, the plaintiff has not alleged that those statements were sent to anyone. The cover sheet was addressed to the plaintiff, but the plaintiff alleges not to have received that fax. It does not follow that someone else actually did receive the fax, and the plaintiff's speculation that someone else might have received the fax is insufficient to maintain a defamation claim. Therefore, the June 27, 2013 fax cannot be the basis of a defamation claim.

Finally, the response to the plaintiff's FOIL request cannot be a basis for a defamation claim. The plaintiff alleges that she received a Corporal Punishment Intake Form, stating that the plaintiff was alleged to have "pushed and grabbed" a student in the process of taking the student's shoe, and that the case had been sustained and closed. Am. Compl. ¶ 58. The document was sent to the plaintiff, not published to a third party, and the plaintiff cannot sustain a defamation claim for material only sent to her. See Kamchi, 1 N.Y.S.3d at 180. Nor

has the plaintiff alleged the Corporal Punishment Intake Form was published to any non-privileged third party.  Second, the plaintiff has not alleged that the documents were false.  While she may disagree with the outcome of the investigation, she has not alleged that the statements about the nature of the investigation were false.  See, e.g., Sandiford v. City of New York Dep't of Educ., 907 N.Y.S.2d 440 (Sup. Ct. 2010), aff'd as modified, 943 N.Y.S.2d 48 (App. Div. 2012) (materials stating the fact and nature of an investigation into the plaintiff's misconduct did not constitute false statements), aff'd, 999 N.E.2d 1144 (N.Y. 2013).  Therefore, the documents produced in response to the plaintiff's FOIL request cannot be the basis of a defamation claim.

Accordingly, the plaintiff has failed to state a claim for defamation.

### C. Breach of Contract

The plaintiff's breach of contract claim is time barred and the plaintiff fails to state a breach of contract claim.

The statute of limitations for a breach of contract claim is six years.  N.Y. C.P.L.R. § 213(2).  "New York does not apply the discovery rule to statutes of limitations in contract actions. Rather, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the

wrong or injury." ACE Sec. Corp. v. DB Structured Prod., Inc.,
36 N.E.3d 623, 628 (N.Y. 2015). The events in question arise
out of the investigation into the corporal punishment
allegation against the plaintiff in June 2013 and shortly
thereafter. The complaint was filed on October 18, 2019. There
are no allegations of any breach of contract on or after October
18, 2013 with respect to the investigation into the corporal
punishment allegation. Therefore, the breach of contract claims
with respect to the corporal punishment investigation and
allegation are time barred.

The plaintiff also claims that she was unlawfully denied
tenure in 2013-2014. There is not enough specificity to
determine whether the denial of tenure claim is time barred
because the plaintiff alleges that it happened between 2013-
2014, and she first filed suit on October 18, 2019.
Nonetheless, the plaintiff has failed to state a breach of
contract claim.

The plaintiff alleges that the defendants breached the
contract between the DOE and the UFT. However, the plaintiff is
not a party to that contract, and only the union can initiate a
breach of contract claim on that contract. See Berlyn v. Bd. of
Educ. of E. Meadow Union Free Sch. Dist., 435 N.Y.S.2d 793, 794
(App. Div. 1981) ("A union member has no individual rights under
a collective bargaining agreement which he can enforce against

his employer except through the union."), aff'd, 433 N.E.2d 1278
(N.Y. 1982).  Accordingly, the plaintiff lacks standing to
assert this breach of contract claim.  See Cummings v. City of
New York, No. 19-cv-7723, 2020 WL 882335, at *14 (S.D.N.Y. Feb.
24, 2020) ("Plaintiff lacks standing to assert a breach of the
contract between DOE and the Union.  By becoming a union member,
an individual employee has no individual rights under a
collective bargaining agreement which he can enforce against his
employer except through the union.").

The plaintiff asserts that she should be permitted to bring
this breach of contract claim because she is on a leave of
absence.  This argument fails.  The plaintiff does not allege
adequately that the Collective Bargaining Agreement excludes
teachers on leave from union representation, and the plaintiff
makes no plausible argument that her union representation would
be precluded by her being on leave.

The plaintiff also alleges that the union violated its duty
of fair representation but has failed to allege sufficient facts
to allege such a claim.  In any event, that claim would be
against the union, not the defendants in this case.

Finally, the plaintiff alleges violations of regulations
promulgated by the New York City Schools Chancellor, head of the
DOE, as a basis for her breach of contract claim.  However,
those regulations are not contracts between the plaintiff and

21

defendants.  And the plaintiff has failed to allege why those
regulations should be construed as part of the plaintiff's
employment contract.  See, e.g., Rothbein v. City of New York,
No. 18-cv-5106, 2019 WL 977878, at *15 (S.D.N.Y. Feb. 28, 2019)
(dismissing breach of contract claim because the DOE regulations
were not part of the employment contract).  The plaintiff does
not allege that she "detrimentally relied" on the DOE procedures
regarding corporal punishment in accepting or maintaining her
employment, and as such, there is no basis to conclude that the
Chancellor's regulations formed part of the employment contract.
See id.  Therefore, even if the defendants failed to comply with
the DOE and Chancellor regulations, that failure is an
insufficient basis to bring a breach of contract claim based on
the allegations set forth in the Amended Complaint.

### D. Fraud

"Under New York law, to state a claim for fraud a plaintiff
must demonstrate: (1) a misrepresentation or omission of
material fact; (2) which the defendant knew to be false;
(3) which the defendant made with the intention of inducing
reliance; (4) upon which the plaintiff reasonably relied; and
(5) which caused injury to the plaintiff." Wynn v. AC
Rochester, 273 F.3d 153, 156 (2d Cir. 2001).  Federal Rule of
Civil Procedure 9(b) provides that "[i]n alleging fraud or
mistake, a party must state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule
9(b) requires that a complaint "specify the time, place,
speaker, and content of the alleged misrepresentations."
Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001).
Moreover, the plaintiff must "explain how the misrepresentations
were fraudulent and plead those events which give rise to a
strong inference that the defendant had an intent to defraud,
knowledge of the falsity, or a reckless disregard for the
truth." Id. (quoting Conn. Nat'l Bank. v. Fluor Corp., 808 F.2d
957, 962 (2d Cir. 1987).

The plaintiff fails to allege any specific details of the
defendants' allegedly fraudulent behavior. For example, the
plaintiff alleges that the defendants made false
representations, but does not allege that the defendants had the
requisite scienter. See Wynn, 273 F.3d at 156. The plaintiff
also points to a form dated July 10, 2017 that notes that
several documents related to the investigation of the shoe
incident no longer can be found. She alleges that this is
evidence of fraudulent concealment. However, the plaintiff
fails to make specific allegations about who was responsible for
removing those documents and how the inability to find these
documents constitutes fraud. Moreover, the plaintiff fails to
allege that she reasonably relied on the defendant's alleged
fraud, which is fatal to her claim.

Accordingly, the plaintiff has failed to state a claim for fraud.

**E. Intentional and Negligent Infliction of Emotional Distress**

The plaintiff's claims for intentional and negligent infliction of emotional distressed are time barred and should also be dismissed because the claims are duplicative of the defamation claims.  Moreover, the plaintiff has failed to plead IIED and NIED Sufficiently.

The limitations period for IIED, as an intentional tort, is one year, and the limitations period for negligent infliction of emotional distress is three years.  See N.Y. C.P.L.R. §§ 215(3) & 214(5); Callahan v. Image Bank, 184 F. Supp. 2d 362, 363 (S.D.N.Y. 2002); Peters v. Citibank, N.A., 677 N.Y.S.2d 626, 626 (App. Div. 1998); see also Goldstein v. Mass. Mut. Life Ins. Co., 820 N.Y.S.2d 852, 854 (App. Div. 2006) ("[T]he causes of action alleging intentional and negligent infliction of emotional distress . . . are barred by the one-year statute of limitations for intentional torts to the extent that they allege intentional conduct, or the three-year statute of limitations governing personal injury claims insofar as they allege negligent conduct.").  The conduct that serves as the basis for the IIED and NIED claims is the allegedly untrue statements in the plaintiff's file and the failure to comply with the relevant regulations in conducting the corporal punishment investigation.

24

Those events occurred in 2013, and therefore under the one-year statute of limitations for IIED and the three-year statute of limitations for NIED, those claims are time barred.

Moreover, the allegations giving rise to the claim for IIED consist of the same allegations that give rise to the claims for defamation.  Therefore, the IIED claim should be dismissed because it is duplicative of the defamation claims. See Brancaleone v. Mesagna, 736 N.Y.S.2d 685, 687 (App. Div. 2002); Ghaly v. Mardiros, 611 N.Y.S.2d 582, 583 (App. Div. 1994).

Additionally, claims for IIED cannot be brought against the City and the DOE because they are government entities.  See, e.g., Frederique v. Cnty. of Nassau, 168 F. Supp. 3d 455, 483-84 (E.D.N.Y. 2016); Wyllie v. Dist. Att'y of Cnty. of Kings, 770 N.Y.S.2d 110, 115 (App. Div. 2003) ("[P]ublic policy bars claims sounding in intentional infliction of emotional distress against a governmental entity.").

Moreover, the plaintiff has failed to plead claims for IIED and NIED adequately.  Under New York law, intentional infliction of emotional distress has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. N.Y. Post Co., 612 N.E.2d 699, 702 (N.Y. 1993)).  Typically, in order

25

to sustain an IIED claim, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Fischer v. Maloney, 373 N.E.2d 1215, 1217 (N.Y. 1978).

In this case, the plaintiff has failed to allege anything close to the requisite outrageous conduct or the intent to cause emotional distress.  The plaintiff alleges that the individual defendants failed to notify her of the results of the corporal punishment investigation and did not comply with procedural regulations in the course of that investigation.  Even if true, those allegations are far insufficient to support an IIED claim.

"[E]xtreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress." Taggart v. Costabile, 14 N.Y.S.3d 388, 398 (App. Div. 2015).  While New York courts have recognized several types of NIED claims, the relevant type of NIED claim in this case is for "when there is a duty owed by defendant to plaintiff," and there is a "breach of that duty resulting directly in emotional harm," even if there is no physical injury.  Kennedy v. McKesson Co., 448 N.E.2d 1332, 1334 (N.Y. 1983).[3]  In addition to the breach of duty, the plaintiff

---

[3] The other two types of NIED claims are for "zone-of-danger" scenarios and where a third party is physically injured by a "violation of some duty which

must show that she sustained "mental injury" as a "direct, rather than a consequential, result of the negligence, and that the claim of emotional distress possesses some guarantee of genuineness." Taggart, 14 N.Y.S.3d at 396. Absent certain recognized instances of negligence not relevant in this case, "the guarantee of genuineness generally requires that the breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety." Id. The type of negligence alleged in this case, failing to notify the plaintiff of the results of the corporal punishment allegation and failing to comply with procedural regulations with respect to that investigation, is not sufficient for the plaintiff to sustain an NIED claim.

Accordingly, the plaintiff has failed to state a claim for IIED or NIED.

### F. Negligence

The plaintiff's negligence claim is time barred and the plaintiff fails to state a negligence claim.

The limitations period for negligence is three years. See N.Y. C.P.L.R. § 214(5). The claim accrues on the date of the occurrence of the injury, rather than the date the act or injury

---

causes only financial or emotional harm to the plaintiff." Taggart, 14 N.Y.S.3d at 395-96.

is discovered.  See Bell v. Gotham Process Serv., Inc., No. 06-
cv-470, 2007 WL 4205822, at *4 (S.D.N.Y. Nov. 28, 2007); Kronos,
Inc. v. AVX Corp., 612 N.E.2d 289, 292 (N.Y. 1993).  The acts
constituting the negligence claim relate to the allegedly false
statements in the plaintiff's file, made in 2013, and the 2013
investigation into her corporal punishment allegation.
Therefore, the negligence claim is time barred.

Moreover, the plaintiff has failed to state a negligence
claim.  The elements of negligence under New York law are "(1) a
duty owed to the plaintiff by the defendant, (2) breach of that
duty, and (3) injury substantially caused by that breach."
Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d
Cir. 2002) (citing Merino v. N.Y.C. Transit Auth., 639 N.Y.S.2d
784, 787 (App. Div. 1996), aff'd, 675 N.E.2d 1222 (N.Y. 1996)).
A defendant's negligent act qualifies as a proximate cause of an
injury where the act was "a substantial cause of the events
which produced the injury."  Hain v. Jamison, 68 N.E.3d 1233,
1237 (N.Y. 2016) (quoting Mazella v. Beals, 57 N.E.3d 1083, 1090
(N.Y. 2016)).  Whether an act is a substantial cause of an
injury "turns upon questions of foreseeability."  Id.

In this case, the plaintiff has not alleged any injury
caused by the defendants' alleged breach of duty except for the
allegedly defamatory statements, and therefore fails to allege a
valid theory of negligence.  See Cummings, 2020 WL 882335, at

*27 ("[The plaintiff's] attempt to recast a defamation claim as various other torts is impermissible under New York law.  Each of Plaintiff's claims for negligence and emotional distress must be dismissed."); see also Anyanwu v. Columbia Broad. Sys., Inc., 887 F. Supp. 690, 693-94 (S.D.N.Y. 1995) (collecting cases).

Accordingly, the plaintiff failed to state a claim for negligence.

## G. New York City

The DOE and the City are separate legal entities.  See, e.g., Perez ex rel. Torres v. City of New York, 837 N.Y.S.2d 571, 572 (App. Div. 2007) ("While the 2002 amendments to the Education Law providing for greater mayoral control significantly limited the power of the Board of Education, the City and the Board remain separate legal entities.").  The plaintiff does not make any specific allegations against the City.  All allegations are against the DOE and the individual defendants.  Accordingly, the City of New York is dismissed from the action.

## CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not discussed above, the arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss is **granted.**  This case is dismissed without prejudice to the plaintiff's ability to file

an amended complaint.  If the plaintiff fails to file an amended
complaint within 30 days of the date of this opinion, the
dismissal will become a dismissal with prejudice.  The Clerk is
also directed to close all pending motions.

**SO ORDERED.**

**Dated:     New York, New York**
**           March 9, 2021              /s/ John G. Koeltl**
**                                      John G. Koeltl**
**                              United States District Judge**