UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRITTNEY BIEHNER,
                     Plaintiff,            19-cv-9646 (JGK)

        - against -

CITY OF NEW YORK, ET AL.,          MEMORANDUM OPINION
                                      AND ORDER
                     Defendants.

JOHN G. KOELTL, District Judge:

The plaintiff, Brittney Biehner, a special education teacher, brought this action against the City of New York (the "City"), the New York City Department of Education (the "DOE"), Omotayo Cineus, Steve Traversiere, and John Does #1-100, alleging various causes of action relating to an internal investigation into her conduct with one of her students. On March 9, 2021, this Court issued a Memorandum Opinion and Order dismissing the plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with leave to replead. See Biehner v. City of New York, No. 19-cv-9646, 2021 WL 878476 (S.D.N.Y. Mar. 9, 2021). On April 8, 2021, the plaintiff filed her Second Amended Complaint against the same defendants, repeating the allegations set forth in the First Amended Complaint with few additions.

The defendants now move to dismiss the Second Amended Complaint. They argue that the plaintiff's causes of action are barred by the relevant statutes of limitations, and that the

1

plaintiff has failed to state a claim upon which relief can be granted. For the following reasons, the defendants' renewed motion to dismiss is **granted**.

I.

The Court presumes general familiarity with the facts of this case, which are set forth in detail in the Second Amended Complaint and the Court's March 9, 2021 Memorandum Decision and Order. See Biehner, 2021 WL 878476, at *1-2. The allegations in the Second Amended Complaint are accepted as true for purposes of this motion to dismiss.

In brief, the plaintiff, Brittney Biehner, also known as Brittney Reilly, was a probationary DOE special education teacher at the Catherine and Count Basie Middle School 72 ("MS 72") in Queens, New York. Second Am. Compl. ¶¶ 18, 22, ECF No. 33. She alleges that, in 2013, she was wrongfully accused of corporal punishment after an incident that year in which a student claimed that the plaintiff forcibly took his shoe in exchange for a folder. Id. ¶¶ 20, 21, 26, 83. The defendants promptly began an investigation into the accusation and eventually sustained the allegation. Id. ¶¶ 23, 83. But the defendants never informed Ms. Biehner of the results of the investigation or of its specific nature as an investigation into corporal punishment. Id. ¶¶ 42-45. Indeed, despite school regulations mandating notice and other reporting requirements,

id. ¶¶ 27-35, Ms. Biehner alleges that she first learned of the investigation—as well as its results—in October 2018, when, while on maternity leave, she reviewed her DOE personnel file, id. ¶ 44. Ms. Biehner was on leave between September 2014 and August 2020 due to a combination of maternity and disability leave. Id. ¶ 48. The plaintiff also alleges that, during the 2013-2014 school year, she was "inappropriately and inexplicably denied tenure." Id. ¶ 47.

Ms. Biehner filed this lawsuit on October 18, 2019. ECF No. 1. Her First Amended Complaint asserted claims for violation of her constitutional right to due process pursuant to 42 U.S.C. § 1983 ("Section 1983"), conspiracy to violate her constitutional right to due process pursuant to 42 U.S.C. § 1985 ("Section 1985"), defamation, breach of contract, fraud, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and negligence. See generally First Am. Compl., ECF No. 24. On March 9, 2021, this Court dismissed the First Amended Complaint with leave to amend. See Biehner, 2021 WL 878476, at *11.

## II.

On April 8, 2021, the plaintiff filed a Second Amended Complaint against the same defendants. ECF No. 33. The Second Amended Complaint is largely duplicative of the First Amended Complaint. However, there are a few notable additions.

3

The Second Amended Complaint alleges that Ms. Biehner attempted to return to her job at MS 72 but was thwarted from doing so. Second Am. Compl. ¶¶ 50-55. Specifically, Ms. Biehner claims that, in April 2020, she notified the DOE of her desire to return from her continued leave of absence and received confirmation that she would be placed on the payroll once her leave expired. Id. ¶¶ 50-52. However, Ms. Biehner was never placed back on the payroll. Id. ¶ 52. Despite contacting the school's new principal, Ativia Sandusky, in August 2020, Ms. Biehner claims that she never received any information from the DOE about her return or the standard documentation typically sent to incoming teachers prior to the start of the school year. Id. ¶ 54.

On September 1, 2020, Ms. Sandusky finally responded to Ms. Biehner, claiming that she had not been notified of Ms. Biehner's desire to return to the DOE and alerting Ms. Biehner to the "strong possibility that [she] will be excessed." Id. Excessing refers to the "process by which less senior teachers are removed from a school's table of organization and assigned to the Absent Teacher Reserve or another school placement. Excessed teachers retain their DOE employment with full salary and benefits." Renewed Mot. to Dismiss at 3 n.3, ECF No. 37.

On September 10, 2020, Ms. Biehner claims that she received a letter telling her not to "report back to the prior school

4

location to which [she] [was] assigned in June 2020." Second Am. Compl. ¶ 56. Then, on September 16, 2020, she claims that she received an email from the DOE prompting her to report to MS 72 the following day, lest she be "marked with an unauthorized absence again." Id. ¶ 57. Ms. Biehner did not report to the school as requested and instead resigned from the DOE amid the confusion about her return to work. Id. ¶ 58.

In addition to arguing that the foregoing newly pleaded facts substantiate or "revive" her earlier claims, the plaintiff's Second Amended Complaint also appears to bring new legal claims for gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Specifically, Ms. Biehner appears to argue that the defendants mishandled her return and excessed her, resulting in her resignation, in part because she is a woman and had taken maternity leave and in retaliation for her bringing this litigation.

## III.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.

2007).[1] The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Biehner, 2021 WL 878476, at *2-3.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

## IV.

The plaintiff's Second Amended Complaint appears to raise the following claims: (1) gender discrimination in violation of Title VII, (2) retaliation in violation of Title VII, (3) violation of her constitutional right to due process pursuant to Section 1983, (4) conspiracy to violate her constitutional right to due process pursuant to Section 1985, (5) defamation, (6) breach of contract, (7) fraud, (8) IIED, (9) NIED, and (10) negligence. These claims are discussed in turn.

### A. Title VII

The plaintiff first argues that the defendants' refusal to notify her of the date and location of her return from maternity leave and her eventual excessing and resignation constituted gender discrimination and retaliation in violation of Title VII.

Title VII makes it unlawful for an employer to discriminate on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), and to retaliate against an employee "on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination," Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 342 (2013) (citing 42 U.S.C. § 2000e-3(a)). Title VII's prohibition against gender discrimination includes a prohibition against pregnancy discrimination. Shimanova v. TheraCare of N.Y., Inc., No. 15-cv-6250, 2017 WL 980342, at *4 (S.D.N.Y. Mar. 10, 2017) (citing

7

Young v. United Parcel Serv., Inc., 575 U.S. 206, 135 S. Ct.

1338, 1343 (2015) and Quaratino v. Tiffany & Co., 71 F.3d 58, 63

(2d Cir. 1995)). To establish a prima facie case of gender

discrimination under Title VII, a plaintiff must show that: (1)

she is a member of a protected class, (2) she was qualified for

the position, (3) she suffered an adverse employment action, and

(4) the adverse employment action occurred under circumstances

giving rise to an inference of discrimination. See McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Littlejohn v.

City of New York, 795 F.3d 297, 307 (2d Cir. 2015). A similar

framework applies to Title VII retaliation claims. To establish

a prima facie case of retaliation, a plaintiff must show that:

(1) she participated in a protected activity, (2) her employer

knew of such participation, (3) she suffered an adverse

employment action, and (4) there was a causal connection between

her engaging in the protected activity and the adverse

employment action, meaning that retaliation was the "but for"

cause of the adverse action. See Moy v. Perez, 712 F. App'x 38,

40 (2d Cir. 2017) (summary order). However, for both

discrimination and retaliation claims, a plaintiff is not

required to plead a prima facie case to defeat a motion to

dismiss. See Morales v. City of New York, No. 14-cv-7253, 2016

WL 9651130, at *4 (S.D.N.Y. Aug. 9, 2016) (quoting Vega v.

Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015))

(discrimination context); Antrobus v. City of New York, No. 19-cv-6277, 2021 WL 848786, at *4 (E.D.N.Y. Mar. 5, 2021) (quoting Duplan v. City of New York, 888 F.3d 612, 625 (2d Cir. 2018)) (retaliation context). To survive a motion to dismiss, a plaintiff alleging discrimination and/or retaliation need only assert sufficient nonconclusory factual matter to nudge her claims across the line from conceivable to plausible. See Morales, 2016 WL 9651130, at *4 (quoting Vega, 801 F.3d at 84); Antrobus, 2021 WL 848786, at *4 (quoting Duplan, 888 F.3d at 625).

In this case, both of the plaintiff's Title VII claims must be dismissed for failure to state a claim.[2] First, the plaintiff's claims against the individual defendants are barred because Title VII does not impose liability on individuals. See Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam); see, e.g., Lore v. City of Syracuse, 670 F.3d 127, 169

---

[2] While the defendants are correct that the plaintiff fails to allege that she filed a charge with the Equal Employment Opportunity Commission, let alone that she received a right-to-sue letter, this is not dispositive at this stage. See Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018) (stating that a plaintiff's failure to plead facts relating to administrative exhaustion is generally insufficient to justify dismissing a claim at the motion to dismiss stage); see, e.g., Tatas v. Ali Baba's Terrace, Inc., No. 19-cv-10595, 2020 WL 2061539, at *5 (S.D.N.Y. Apr. 29, 2020) (noting that the plaintiff's "pleadings do not contain any mention of the administrative proceedings before the EEOC, and so it is impossible to decide the issue of whether [the plaintiff] has an equitable defense to exhaustion at this time" and denying motion to dismiss for failure to exhaust).

(2d Cir. 2012); Mandell v. County of Suffolk, 316 F.3d 368, 377

(2d Cir. 2003); Williams v. N.Y.C. Hous. Auth., No. 18-cv-5912,

2021 WL 1109842, at *10 (S.D.N.Y. Mar. 23, 2021).[3]

Second, while not legally barred, the plaintiff's claims

against the DOE must be dismissed because the plaintiff has not

pleaded that she suffered an adverse employment action, and this

is fatal to both her discrimination and retaliation claims. The

plaintiff does not claim that she was fired, demoted, or

suspended. Cf. Sanders v. N.Y.C. Hum. Res. Admin., 361 F.3d 749,

755 (2d Cir. 2004) (noting that examples of adverse employment

actions include "termination of employment, a demotion evidenced

by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material

responsibilities, or other indices . . . unique to a particular

situation"). Instead, she points to her "involuntary"

resignation or excessing as proof of her alleged discrimination

---

[3] In her opposition brief, the plaintiff raises a new claim against the
individual defendants under the New York State Human Rights Law
("NYSHRL"). However, this claim does not appear in her Second Amended
Complaint, and an "[o]pposition to a motion to dismiss is not a proper
means to assert new claims or add additional parties." Williams v.
Rosenblatt Sec. Inc., No. 14-cv-4390, 2016 WL 4120654, at *5 (S.D.N.Y.
July 22, 2016) (citing Mathie v. Goord, 267 F. App'x 13, 14 (2d Cir.
2008) (summary order)). For this reason alone, the claim should be
dismissed. In addition, for the reasons explained below with respect
to the Title VII claims against the DOE, the plaintiff has failed to
state a claim of discrimination or retaliation in violation of the
NYSHRL against the individual defendants. See Smith v. City of New
York, No. 16-cv-9244, 2018 WL 3392872, at *3, *6 (S.D.N.Y. July 12,
2018).

or retaliation. But the plaintiff's resignation cannot serve as an adverse employment action because she does not allege that she resigned out of duress or coercion. See Cadet v. Deutsche Bank Sec. Inc., No. 11-cv-7964, 2013 WL 3090690, at *11 (S.D.N.Y. June 18, 2013). Moreover, being excessed, "standing alone, does not constitute an adverse action for purposes of a discrimination or retaliation claim." See Silva-Markus v. N.Y.C. Dep't of Educ., No. 19-cv-4335, 2020 WL 5819555, at *8 (S.D.N.Y. Sept. 30, 2020) (collecting cases). And the facts surrounding her excessing are insufficient to elevate that event into an adverse employment action. Cf. id. (noting that experiencing a reduction in salary or benefits, combined with excessing, may constitute an adverse employment action).

In any event, the plaintiff has not pleaded adequately the other elements required for her gender discrimination and retaliation claims. Her gender discrimination claim is foreclosed because, even assuming the plaintiff is a member of a protected class and was qualified for her job, the plaintiff's complaint is devoid of any facts that give rise to the suggestion that the DOE decisionmakers were motivated by gender discrimination, including pregnancy discrimination, in their interactions with her. The plaintiff makes no allegations about sexist criticisms or comments, and fails to allege that those outside of her protected class were treated differently from

her. Cf. Salas v. N.Y.C. Dep't of Investigation, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) ("An inference of discrimination can be drawn from circumstances including 'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus,' or 'preferential treatment given to employees outside the protected class[.]'" (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996))). The plaintiff also does not claim that she was replaced by a non-pregnant or male employee. Cf. Mestecky v. N.Y.C. Dep't of Educ., No. 13-cv-4302, 2018 WL 10509457, at *9 (E.D.N.Y. Mar. 30, 2018), aff'd, 791 F. App'x 236 (2d Cir. 2019). Moreover, because she does not even indicate when she was pregnant, the plaintiff has not pleaded anything suspicious about the temporal proximity between her pregnancy and her being excessed and later resigning. See Rinsler v. Sony Pictures Ent., Inc., No. 02-cv-4096, 2003 WL 22015434, at *6 (S.D.N.Y. Aug. 25, 2003). Accordingly, even accepting as true the plaintiff's claim that the defendants acted intentionally in bungling her return from maternity leave, there is nothing to support the plaintiff's allegations that the defendants were motivated by her gender in so acting. The plaintiff has therefore failed to raise a minimal

inference of gender discrimination, and her claim must be dismissed.[4]

The plaintiff's retaliation claim is similarly deficient because, even assuming the other elements are met, she fails to plausibly allege causation. The only possible proof of causation between her protected activity—namely, the filing of this lawsuit—and the alleged adverse employment actions—her resignation or excessing—is their temporal proximity. But the plaintiff was excessed and resigned in September 2020, almost one year after she filed her first complaint in October 2019. Courts in this circuit have held that "a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 155 (E.D.N.Y. 2015) (collecting cases). And because the plaintiff does not allege other facts to suggest plausibly "retaliatory animus," such as "negative comments by supervisors" or "admission[s] by the decisionmaker[s] that [they] . . . made a

_____

[4] The plaintiff appears to argue that the DOE has a pattern or practice of discriminating against women who take maternity leave. But as the United States Court of Appeals for the Second Circuit has held, a non-class plaintiff cannot rely on this evidence to establish an inference of discrimination. See Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 149 (2d Cir. 2012) (declining to permit "private plaintiffs to use the pattern-or-practice method of proof outside the class action context"). And while it is true that an individual plaintiff may raise evidence of such a pattern or practice to establish liability in an individual case, id. at 147, there is no such evidence pleaded here.

decision by relying on an improper consideration," the plaintiff
has failed to plead a claim for retaliation. See Tenemille v.
Town of Ramapo, No. 18-cv-724, 2020 WL 5731964, at *12 (S.D.N.Y.
Sept. 24, 2020).

The plaintiff's claims for gender discrimination and
retaliation are therefore dismissed.

### B. Sections 1983 and 1985

The plaintiff also brings claims pursuant to Sections 1983
and 1985. Specifically, the plaintiff alleges that the
defendants' conduct in connection with their investigation into
the corporal punishment allegation in 2013, their denial of her
tenure in 2014, and their more recent actions in response to her
desire to return to work violated her due process rights.

For the reasons the Court stated in its original decision,
the plaintiff's claims pursuant to Section 1983 must be
dismissed. First, the plaintiff's claim asserting a deprivation
of a property interest in her position as a probationary teacher
is barred by the three-year statute of limitations. Biehner,
2021 WL 878476, at *3-4. This claim also continues to be
insufficient to state a claim: because Ms. Biehner was a
probationary teacher, she does not have a "property interest in
her continued employment," and without such an interest, she
cannot claim a deprivation of property under Section 1983. Id.
at *4. Nothing in the plaintiff's Second Amended Complaint

alters this conclusion. Second, the plaintiff's claim that she was deprived of a liberty interest remains time-barred and continues to fail to state a claim. The plaintiff does not respond to the Court's original decision or add facts that would render this "stigma-plus" claim sufficient.[5] And finally, the plaintiff's claim pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) fails for the reasons that the Court stated originally. See Biehner, 2021 WL 878476, at *5. To the extent that the plaintiff adds reasons for why this should not be so, these are policy, not legal, arguments. The plaintiff's claims pursuant to Section 1983 are therefore dismissed.

Similarly, the plaintiff fails to state a claim pursuant to Section 1985, and this claim is also dismissed. The Court previously dismissed this claim because "the plaintiff ha[d] not

_____

[5] The plaintiff does not allege that her being excessed and resigning constituted the "plus" in her "stigma plus" claim. Even if she had—and if this were sufficient to "revive" her due process claims—the plaintiff would continue to fail to plead adequately a deprivation of a liberty interest. The plaintiff cannot voluntarily leave her job and at the same time claim such resignation constitutes a violation of her liberty. See Smith v. Town of Stony Point, No. 13-cv-5000, 2014 WL 2217900, at *4 (S.D.N.Y. May 22, 2014). Moreover, there is too large a time gap—at least six years—between the claimed stigma (that is, the allegedly defamatory statements) and her being excessed and resigning. "[A] concurrent temporal link between the defamation and the [adverse employment action] is necessary if the employee is to succeed upon a claim of liberty deprivation." Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 32 (2d Cir. 1994); see also Holmes v. Gaynor, 313 F. Supp. 2d 345, 360-61 (S.D.N.Y. 2004) (finding the "requisite link . . . clearly absent" where defamation occurred nine months before the dismissal).

pleaded adequately any underlying violation of her constitutional rights" and because, under the intracorporate conspiracy doctrine, the defendants could not have "formed a conspiracy with respect to the investigation." Id. at *6. So too, here. The plaintiff continues to fail to plead an underlying violation of any constitutional right. Moreover, while the plaintiff newly argues that the facts underlying her claim fit into one or more exceptions to the intracorporate conspiracy doctrine, this argument is unpersuasive. First, while the plaintiff is correct that "[an] exception to the intracorporate conspiracy doctrine allows suits against individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity," Dowd v. DeMarco, 314 F. Supp. 3d 576, 588 (S.D.N.Y. 2018), her argument as to its applicability here is contradicted by her own claims in the Second Amended Complaint. The Second Amended Complaint specifically alleges that, "at all times mentioned in this complaint, Defendants were the agents and employees of their codefendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment." Second Am. Compl. ¶ 14 (emphasis added). The plaintiff's attempt to apply the "personal interest" exception to the intracorporate conspiracy doctrine therefore fails. See Dowd, 314 F. Supp. 3d at 588 (denying applicability of exception

16

because plaintiff's "argument is contradicted by the amended complaint itself, which affirmatively alleges that the acts of all defendants were conducted within the scope of their official duties or employment"); K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013)(denying applicability of exception because the complaint alleged that the defendants "were on duty and acting within the scope of their employment at the time of the alleged conspiracies").

Second, the plaintiff's claim that the intracorporate conspiracy doctrine does not apply in this case because the conduct challenged is continuing over a period of years, as opposed to a single act, fails. The United States Court of Appeals for the Second Circuit "has not weighed in on this theory," but many "[d]istrict courts in the Second Circuit that have considered it have rejected it because, among other reasons, such a line responds neither to the text nor to the objectives of Section 1985, which depends on multiple actors, not on multiple acts of discrimination or retaliation." Germain v. M & T Bank Corp., 111 F. Supp. 3d 506, 540 (S.D.N.Y. 2015).

In any event, the plaintiff's claim pursuant to Section 1985 is dismissed because the plaintiff fails to provide a factual basis supporting a meeting of the minds. Id. at 541 (quoting Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003)). The plaintiff's conclusory allegations that the defendants acted in

17

concert are insufficient. See Van Dunk v. St. Lawrence, 604 F. Supp. 2d 654, 663 (S.D.N.Y. 2009) ("Claims of conspiracy that are vague and provide no basis in fact must be dismissed."); Webb, 340 F.3d at 111 (affirming dismissal of the plaintiff's claims pursuant to Section 1985 because the "plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants"). Accordingly, because no exceptions to the intracorporate conspiracy doctrine are applicable, and because the plaintiff has not alleged any facts regarding a meeting of the minds between the defendants—let alone an underlying violation of her constitutional rights—the plaintiff fails to state a claim pursuant to Section 1985.

The plaintiff's claims under Sections 1983 and 1985 are therefore dismissed.

### C. Defamation

The plaintiff next alleges that the defendants defamed her on several occasions in 2013.

In its prior opinion, the Court dismissed these claims on the grounds that they were untimely and failed to state a claim. In her Second Amended Complaint, the plaintiff repeats the same claims and arguments without responding to the Court's original reasoning. While the plaintiff claims that her allegations regarding the 2020-2021 academic year revive her previously

dismissed defamation claims, there is nothing to support this
argument. As the Court previously held, a claim for defamation
"accrues when the allegedly defamatory statements are
published." Biehner, 2021 WL 878476, at *6. The statements at
issue here were published in 2013, thus rendering them time-
barred after 2014 under the one-year statute of limitations. See
id. at *6-7. Nothing about the plaintiff's new allegations
regarding the defendants' mishandling of her return to the
school affects the limitations period or alters the Court's
conclusion that she has failed to state a claim. Therefore, for
the reasons stated in the original decision, the plaintiff's
defamation claim is dismissed.

### D. Breach of Contract

The plaintiff also repeats her claim for breach of contract
in connection with the 2013 investigation and her denial of
tenure during the 2013-2014 year. Additionally, she newly
alleges that the defendants' conduct in response to her
attempted return to MS 72 in 2020 constituted a breach of
contract.

In its previous opinion, the Court dismissed the breach of
contract claim with respect to the corporal punishment
investigation and allegation because it was untimely and failed
to state a claim for breach of contract. Id. at *7-8. The Second
Amended Complaint does not add any relevant facts or claims in

response to the Court's decision. Therefore, the breach of contract claim as to the corporal punishment investigation is dismissed.

The plaintiff's claim as to the denial of tenure is not clearly barred by the six-year limitations period. See id. at *7. Moreover, the plaintiff's new allegation relating to her attempt to return to MS 72 in 2020 is timely. See N.Y. C.P.L.R. § 213(2). Nonetheless, both claims must be dismissed for failure to state a claim for breach of contract.

The plaintiff alleges violations of both (1) the contract between the DOE and the United Federation of Teachers (the "UFT") and (2) the regulations promulgated by the New York City Schools Chancellor, the head of the DOE, as the bases for her breach of contract claims. But, as the Court originally explained, these are not proper bases for the plaintiff's claims. First, the DOE and Chancellor regulations are not contracts between the plaintiff and the defendants, Biehner, 2021 WL 878476, at *7, and the plaintiff again fails to demonstrate why those regulations should be construed as part of her employment contract. Accordingly, for the reasons stated in the original decision, the defendants' alleged violations of the DOE and Chancellor regulations cannot serve as the basis for the plaintiff's breach of contract claims.

Second, the contract between the DOE and the UFT is not a
sufficient basis for the plaintiff's breach of contract claims
because the plaintiff is not a party to that contract, and she
lacks standing to assert a breach of the contract between the
DOE and the UFT. See id. As this Court explained, "[t]he
plaintiff does not allege adequately that the Collective
Bargaining Agreement excludes teachers on leave from union
representation, and the plaintiff makes no plausible argument
that her union representation would be precluded by her being on
leave." Id. at *8. While the plaintiff's Second Amended
Complaint responds that the "Collective Bargaining Agreement
specifically excludes teachers on leave from Union
representation, and the Plaintiff would be precluded from union
representation while she was on maternity leave," Second Am.
Compl. ¶ 156, this is insufficient. The plaintiff does not cite
to any provision in the Collective Bargaining Agreement that
"specifically excludes her." See Decl. in Supp. of First Mot. to
Dismiss Ex. A, ECF No. 27-1. And, in any event, the plaintiff's
allegations of exclusion are conclusory. See Hunt v. Klein, No.
10-cv-02778, 2011 WL 651876, at *3 (S.D.N.Y. Feb. 10, 2011),
aff'd, 476 F. App'x 889 (2d Cir. 2012) (holding that the
plaintiff lacked standing to assert claims under the Collective
Bargaining Agreement because, among other things, he did not
"allege any facts establishing that the union failed to act on

21

his behalf with respect to any grievance claim against the
Defendant, or that the union's conduct was arbitrary,
discriminatory, or in bad faith"). "[N]aked assertions devoid of
further factual enhancement" "will not do." Iqbal, 556 U.S. at
678.

Accordingly, for largely the same the reasons as stated in
the original decision, the plaintiff's claims for breach of
contract are dismissed.

### E. Fraud

The plaintiff next makes general allegations of fraud,
repeating the same arguments that the Court rejected in its
original decision. To the extent that the plaintiff makes a new
claim for fraud based on the allegedly misleading information
she received in response to her attempted return to MS 72 in
2020, this claim fails for similar reasons. In particular, the
plaintiff fails to allege that the defendants acted with the
requisite scienter when they mishandled her return to work and
allegedly misled her in the process. That the plaintiff finds it
hard to believe that MS 72's administration did not know of her
intent to return does not suffice. Therefore, her claim for
fraud fails. See Biehner, 2021 WL 878476, at *8.

### F. Intentional and Negligent Infliction of Emotional Distress

The plaintiff re-alleges that the defendants' conduct
surrounding the 2013 investigation constituted IIED and NIED.

22

She also appears to claim that defendants' conduct in 2020 constituted the same.

As the Court held in its original decision, the plaintiff's claims based on the 2013 incident are time-barred and should be dismissed because the claims are duplicative of her defamation claims and fail to state a claim. See id. at *9-10. The Second Amended Complaint does not respond to the Court's decision dismissing these claims. Moreover, her new factual allegations cannot "revive" her claims. The claims for NIED and IIED based on the 2013 incident are therefore dismissed. See id.

Moreover, the plaintiff has similarly failed to plead IIED and NIED sufficiently with respect to the 2020 incident. Just as in the First Amended Complaint, the plaintiff has "failed to allege anything close to the requisite outrageous conduct or the intent to cause emotional distress." Id. at *10. The plaintiff's only plausible new allegation is that the defendants mishandled her return from her extended leave. But this is far from conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See id. at *9. This is fatal to her IIED claim, and this claim is therefore dismissed.

The plaintiff also fails to allege sufficiently the special duty needed to make out a claim for NIED, thus foreclosing this

claim. The "relevant type of NIED claim in this case is for 'when there is a duty owed by defendant to plaintiff,' and there is a 'breach of that duty resulting directly in emotional harm,' even if there is no physical injury." Id. at *10 (quoting Kennedy v. McKesson Co., 448 N.E.2d 1332, 1334 (N.Y. 1983)). But "[a]n employer does not owe a special duty to an individual employee, because it has an obligation to treat all employees in the same manner." Cummings v. City of New York, No. 19-cv-7723, 2021 WL 1163654, at *11 (S.D.N.Y. Mar. 26, 2021), reconsideration denied, 2021 WL 1664421 (S.D.N.Y. Apr. 28, 2021). Further, while the plaintiff now alleges that a special duty arises from the requirement that the defendants monitor, supervise and control its employees, this is insufficient. "[A] relationship stemming from [an employer's] obligation to oversee their employees would not be unique to Plaintiff." Id.

Accordingly, based on either the 2013 or the 2020 incident, the plaintiff fails to state a claim for IIED or NIED, and these claims are dismissed.

### G. Negligence

The plaintiff finally brings a claim for negligence in connection with both the 2013 investigation and her attempted return to the school in 2020.

This Court dismissed the 2013-based claims on the grounds that they were time-barred and failed to state a claim. Biehner,

2021 WL 878476, at *10-11. The plaintiff has not responded to this Court's opinion and only repeats her claims made in connection with the First Amended Complaint. Her negligence claim based on the 2013 corporal punishment investigation is therefore dismissed. See id.

Moreover, while the 2020-based claim is timely, N.Y. C.P.L.R. § 214(5), it must nevertheless be dismissed for failure to state a claim for negligence. The plaintiff seems to allege that the defendants' failure to notify her properly that she might be excessed, and their general mismanagement and failure to accommodate her desire to return to the school, constituted negligence. However, as with the plaintiff's claim for NIED, "liability for negligence may not be imposed on a government entity in the absence of a special duty." Cummings, 2021 WL 1163654, at *11. And as explained above in the context of her NIED claim, the plaintiff has not pleaded sufficiently the existence of a special duty. Thus, even accepting her new allegations as true, the plaintiff's claim for negligence based on the 2020 events must be dismissed for failure to state a claim. The plaintiff's claims against the individual defendants must also be dismissed because she does not allege that any of them were involved in or otherwise contributed to the confusion surrounding her return from maternity leave. She therefore cannot establish that the defendants breached a duty of care to

her, let alone the other elements necessary to state a claim for negligence. Accordingly, the plaintiff fails to state a claim for negligence, and this claim is dismissed.

## H. New York City

The plaintiff continues to name the City as a defendant in this action. However, as the Court stated when it dismissed the City in the last opinion, the "DOE and the City are separate legal entities," and the plaintiff makes no specific allegations against the City. Biehner, 2021 WL 878476, at *11. The plaintiff's Second Amended Complaint does not add any new allegations in response to this Court's previous decision; instead, the plaintiff attempts to dispute the Court's conclusion with the same claims made in response to the defendants' initial motion to dismiss. Accordingly, for the same reasons the Court explained earlier, the City is dismissed from the action.

## V.

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit.

For the foregoing reasons, the defendants' motion to dismiss is **granted**. This case is dismissed **with prejudice**. The Clerk is directed to close all pending motions and to close this case.

SO ORDERED.
Dated:      New York, New York
            October 20, 2021

                                    John G. Koeltl
                              **United States District Judge**

27